BAR COUNSEL *vs.* BOARD OF BAR OVERSEERS & another.[1]

Suffolk. January 10, 1995. - April 10, 1995.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & GREANEY, JJ.

*Attorney at Law*, Disciplinary proceeding. *Estoppel. Collateral Estoppel.*

Discussion of the application of the doctrine of collateral estoppel. [9-12]
An attorney was precluded by the doctrine of collateral estoppel from re-
    litigating issues in a disciplinary proceeding that the attorney had pre-
    viously litigated unsuccessfully in a civil action in Federal court. [12]

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on April 1, 1994.

The case was reported by *O'Connor*, J.

*Cathleen C. Cavell,* Assistant Bar Counsel.

*Michael Fredrickson* for Board of Bar Overseers.

LYNCH, J. On October 20, 1993, bar counsel commenced
formal disciplinary proceedings against Attorney John A.
Voros (attorney) by filing a petition for discipline with the
Board of Bar Overseers (board). That petition alleged that
the attorney violated a number of provisions of the discipli-
nary rules in connection with his involvement in a limited
partnership created to acquire an interest in certain real
property. The board referred the petition for discipline to a
hearing committee. S.J.C. Rule 4:01, § 5 (3) (d), 365 Mass.
696 (1974). Bar counsel then moved for judgment on the pe-
tition contending that the attorney was estopped from reliti-
gating issues already decided by the United States District
Court for the District of Massachusetts in Turner *vs.* Voros,
Civ. No. 86-1748-Z (D. Mass. Sept. 12, 1988). Purporting to
act under S.J.C. Rule 4:08 (1), as amended, 414 Mass. 1303

---

[1]John A. Voros, who did not argue or file a brief in this court.

(1993), the board sought guidance from the rules committee of this court on whether the board may apply principles of issue preclusion to bar discipline proceedings.[2] The rules committee declined, however, to take any administrative action on the board's request since the issue raised concerned a case then pending before the board. Bar counsel then brought a complaint before a single justice of this court against the attorney and the board, seeking declaratory relief. The single justice reserved and reported this case to the full court.

The undisputed facts are as follows. In 1980, Basil A. Ente (client) retained the attorney to provide him with legal services concerning both his business and personal matters. By 1984, the client and the attorney had developed a close personal friendship, and the client had become the attorney's only client.[3] In 1984, the attorney told the client that he had experience in creating partnerships, and suggested that together they form a limited partnership. After investigating several properties, they agreed to create a limited partnership to acquire the East Bay Lodge, an established restaurant and hotel located in Osterville on Cape Cod. The partnership was named East Bay Acquisitions Limited Partnership (partnership). The attorney told the client that it was customary to charge between $100,000 and $150,000 in legal fees to set up such a complex partnership, but that he would waive the fees if the client agreed to make the attorney a general partner. The client reluctantly agreed.[4] Despite that agreement, the attorney billed and collected from the partnership over

---

[2]On February 11, 1994, the board stayed the attorney's disciplinary proceedings pending a determination by this court as to the applicability of issue preclusion in bar disciplinary proceedings.

[3]From 1980 to 1984, the attorney charged and the client paid more than $175,000 in legal fees.

[4]The attorney intentionally misrepresented to the client that Massachusetts partnership law requires all general partners to share equally in the ownership and management of the enterprise. Therefore, both the client and the attorney became fifteen per cent owners in the partnership even though the client supplied all of the capital required to form the partnership.

$40,000 in legal fees for drafting partnership documents and for the work of his partner, Ronald Polito, who drafted the partnership's tax provisions.

On September 17, 1984, the attorney and the client entered into an agreement to purchase East Bay Lodge. In order to purchase East Bay Lodge, they obtained a $1,750,000 loan from the Bank of New England (bank). This loan required the client to place a $500,000 second mortgage on his Cape Cod vacation property.[5] After agreeing to the general terms of the partnership, the client recruited at least nine investors to become limited partners. The attorney then drew up an offering memorandum in which he (1) intentionally misrepresented the future profitability of the property; (2) failed to note several outstanding obligations which significantly affected the property's financial position; (3) intentionally misrepresented his own experience in real estate transactions; and (4) grossly overstated his net worth as a general partner.

After its formation, the partnership suffered substantial losses in 1985, 1986, and 1987. The bank foreclosed its mortgage and eventually sold the property. The bank also has threatened to foreclose on the property on which the client had placed a second mortgage.

In June, 1986, the client and the limited partners commenced their suit against the attorney and Polito, alleging: (1) violations of Federal securities law; (2) fraud; and (3) breach of fiduciary duty. Following a bench trial, a Federal District Court judge made certain factual findings concerning the attorney's conduct.[6] The judge entered judgment

---

[5]During the formation of the partnership, the attorney acted as the client's lawyer, aware that the client was relying on him as his personal lawyer. However, the attorney never advised the client of the risks associated with placing a second mortgage on his property. Moreover, the attorney never advised the client or the other limited partners that his own partnership interest in the venture differed from theirs, nor did he advise the client or the other partners to seek the advice of independent counsel.

[6]The judge found that the attorney: (1) made misrepresentations both in the offering memorandum and to certain partners with respect to the financial projections; (2) intentionally misrepresented the requirements of

against the attorney, rescinding the partnership, and ordering the attorney to repay the plaintiffs their invested sums and to pay the client an additional sum for the breach of fiduciary duty. Although the attorney appealed, the appeal was dismissed for want of prosecution. To date, the attorney has paid nothing on the judgment.

In the instant case, both bar counsel and the board contend that the doctrine of collateral estoppel should be applied to bar discipline cases to the same extent that it applies to civil cases. More specifically, both parties argue that the attorney should be precluded from relitigating issues in his pending disciplinary proceedings that he had previously litigated unsuccessfully in Federal court. We agree. "[T]he offensive use of collateral estoppel is a generally accepted practice in American courts," *Aetna Casualty & Sur. Co.* v. *Niziolek*, 395 Mass. 737, 744 (1985), and occurs when a plaintiff seeks to prevent a defendant from litigating issues which the defendant has previously litigated unsuccessfully in an action against another party. *Parklane Hosiery Co.* v. *Shore*, 439 U.S. 322, 326 n.4 (1979). See *Aetna Casualty & Sur. Co., supra* at 742 (party to civil action against former criminal defendant could preclude defendant from relitigating issues already decided in criminal prosecution). See also *Fay* v. *Federal Nat'l Mortgage Co.*, 419 Mass. 782 (1995). Although we have not previously discussed at length the applicability of collateral estoppel in bar discipline proceedings, we have applied the doctrine in analogous cases. For example, in *Haran* v. *Board of Registration in Medicine*, 398 Mass. 571, 581 (1986), this court upheld a Massachusetts regulation which permitted the Board of Registration in Medicine to give a sister State's disciplinary actions collat-

---

Massachusetts law by informing the client that general partners must have equal interests in the partnership; (3) misrepresented his experience in forming partnerships and overstated his net worth; and (4) failed to disclose material facts concerning certain partnership obligations. The judge also found that the attorney had violated his fiduciary obligations to the client and that the attorney "probably [had been] in conflict as a general and a limited partner and counsel to the partnership."

eral effect in a Massachusetts disciplinary proceeding. Simi-
larly, disciplinary adjudications of foreign jurisdictions af-
fecting an attorney admitted to the Massachusetts bar are
given collateral effect in a subsequent Massachusetts pro-
ceeding. S.J.C. Rule 4:01, § 16 (5), as amended, 402 Mass.
1302 (1985).[7] Moreover, a certificate of conviction "[is] con-
clusive evidence of the commission of [the] crime" in an at-
torney's subsequent disciplinary proceeding. S.J.C. Rule
4:01, § 12 (3), 365 Mass. 696 (1974). However, the board
questions whether findings in a civil matter should be given
collateral estoppel effect in a bar discipline proceeding, citing
*Matter of Santosuosso*, 318 Mass. 489 (1945).

In *Santosuosso*, the Bar Association of the City of Boston
sought to introduce in a subsequent disciplinary proceeding
against an attorney the entire record of a civil equity pro-
ceeding, which included the judge's findings, to demonstrate
the attorney's professional misconduct. *Id.* at 490. Although
the court concluded that most of the record could be admit-
ted, the court would not admit the portion of the record con-
taining the judge's findings because "[the findings were] not
evidence but merely constitute[d] the substance of the con-
clusions made by the judge from the evidence and are the
foundation on which the decree rests." *Id.* at 495. However,
*Santosuosso* was decided at a time when the doctrine of col-
lateral estoppel was burdened with the concept of mutuality,
requiring that parties in both actions be the same.

Massachusetts has since abolished this mutuality require-
ment. *Home Owners Fed. Sav. & Loan Ass'n* v. *Northwest-
ern Fire & Marine Ins. Co.*, 354 Mass. 448, 455 (1968). We
see no basis for withholding preclusive effect of civil findings
in a subsequent disciplinary action against an attorney. To
do so would cause to be relitigated issues previously ex-
amined and decided. Such relitigation would not comport

---

[7]Supreme Judicial Court Rule 4:01, § 16 (5), as amended, 402 Mass.
1302 (1985), states: "A final adjudication in another jurisdiction that an
attorney has been guilty of misconduct may be treated as establishing
the misconduct for purposes of a disciplinary proceeding in the
Commonwealth."

with the judicial goals of finality, efficiency, consistency, and fairness, thought to be effectuated through the invocation of collateral estoppel. We conclude that the offensive use of collateral estoppel is appropriate in bar disciplinary proceedings.

Before the doctrine of collateral estoppel can be used offensively, the fact finder should be afforded wide discretion in determining whether to do so would be fair to the defendant. *Whitehall Co.* v. *Barletta*, 404 Mass. 497, 502 (1989). The Restatement (Second) of Judgments § 29 (1982) sets forth eight circumstances for a judge to consider in making this determination:

> "(1) Treating the issue as conclusively determined would be incompatible with an applicable scheme of administering the remedies in the actions involved;
>
> "(2) The forum in the second action affords the party against whom preclusion is asserted procedural opportunities in the presentation and determination of the issue that were not available in the first action and could likely result in the issue being differently determined;
>
> "(3) The person seeking to invoke favorable preclusion, or to avoid unfavorable preclusion, could have effected joinder in the first action between himself and his present adversary;
>
> "(4) The determination relied on as preclusive was itself inconsistent with another determination of the same issue;
>
> "(5) The prior determination may have been affected by relationships among the parties to the first action that are not present in the subsequent action, or apparently was based on a compromise verdict or finding;
>
> "(6) Treating the issue as conclusively determined may complicate determination of issues in the subsequent action or prejudice the interests of another party thereto;
>
> "(7) The issue is one of law and treating it as conclusively determined would inappropriately foreclose op-

portunity for obtaining reconsideration of the legal rule upon which it was based;

"(8) Other compelling circumstances make it appropriate that the party be permitted to relitigate the issue."

Additionally, it should also be determined whether disparate burdens of proof existed in the two proceedings. Compare *Pollock* v. *Marshall*, 391 Mass. 543, 555 (1984) (in civil proceeding, attorney must show transaction fair and equitable) with Rule 3.28 of the Rules of the Board of Bar Overseers (1995) (bar counsel has burden of proof in disciplinary proceedings). See also Restatement (Second) of Judgments § 28 (4) (1982) (no preclusion where "the burden has shifted to [the] adversary of the person" against whom preclusion is sought).

We next address how the doctrine should be applied to the facts of this case. Because of the nature of the factors to be considered and the amount of discretion involved, the fact finder should be responsible, in the first instance, for determining whether issue preclusion should apply. See *Whitehall Co.* v. *Barletta, supra* at 503 (reversing trial court's ruling that collateral estoppel not available, but remanding case for determination whether issue preclusion appropriate); *Haran* v. *Board of Registration in Medicine*, 398 Mass. 571, 579 (1986) (board of registration should have "wide latitude" in deciding which issues suited for resolution by collateral estoppel).

Therefore, we remand this case to the single justice for the entry of a judgment declaring that the board may apply the collateral estoppel principle in bar discipline proceedings in a manner consistent with this opinion.

*So ordered.*