JOLENE SMOLA[1] *vs.* DANIEL HIGGINS & another.[2]

No. 96-P-600.

Worcester. March 14, 1997. - May 28, 1997.

Present: DREBEN, GILLERMAN, & FLANNERY, JJ.

*Lead Poisoning. State Sanitary Code. Collateral Estoppel. Evidence,* Prima
facie evidence.

Where, under G. L. c. 111, § 195, a certified copy of a report of the State
laboratory for lead and lead poisoning detection is merely prima facie
evidence of the facts stated therein and is thus subject to rebuttal, the
fact that an order to delead premises, issued by the Department of Pub-
lic Health and based on such a report, was not appealed from does not
preclude rebuttal evidence challenging the report in a subsequent civil
action. [727-728]
In a civil action, the summary judgment record disclosed genuine issues of
material fact with respect to causation and liability that remained to be
resolved at trial. [728-729]

CIVIL ACTION commenced in the Superior Court Depart-
ment on January 14, 1993.

On transfer to the Worcester County Division of the Hous-
ing Court Department, a motion for summary judgment was
heard by *John G. Martin,* J., and the case was reported by
him to the Appeals Court.

*Gerald T. Anglin* for the defendants.

*Chris A. Milne* for the plaintiff.

*Milinda Drew & Jeffrey M. Feuer* for the Massachusetts
Tenants Organization & another, amici curiae, submitted a
brief.

GILLERMAN, J. In a case involving a six year old child al-
leged to have been seriously injured by lead paint in the
premises at 71 Walnut Street, North Brookfield (property), a

[1] By her mother and next friend, Rose Smola.
[2] Michael McFadden.

judge of the Housing Court entered an interlocutory order allowing the plaintiff's motion for summary judgment as to liability only, and he reported the correctness of his ruling for determination by this court staying any further proceedings in the trial court. See Mass.R.Civ.P. 64(a), 365 Mass. 831 (1974).

In ruling on the plaintiff's motion, the judge reasoned that the defendants, having been ordered by the Department of Public Health (DPH) to delead the property, "neither appealed the order to delead the premises nor challenged the validity of the testing but rather proceeded to have the property deleaded," and that the " 'unchallenged and unappealed' decision of a state sanitary code citation cannot be collaterally attacked in a subsequent proceeding." The judge relied on *Lezberg* v. *Rogers*, 27 Mass. App. Ct. 1158, 1159 (1989) ("[T]he plaintiff is bound by the unchallenged and unappealed decision of the board of health . . . [and the] plaintiff may not collaterally attack that decision in this proceeding").

In his report of the case to this court, the judge wrote that his "interlocutory order significantly affects the merits of the controversy by foreclosing evidence at trial that the lead inspection did not conform to regulations. Thus the question is appropriate for report of the case . . . ." We take this brief statement of the judge to mean that the underlying issue reported to us is whether the judge was correct in allowing the plaintiff's motion for summary judgment as to liability on the ground that the plaintiff may invoke the doctrine of offensive collateral estoppel.[3] If that doctrine is available, the defendants are precluded from offering evidence that the deleading order of the DPH was defective because the inspection of the property for the presence of dangerous amounts of lead did not conform to the applicable regulations.[4]

The following facts are undisputed. The defendants are the

[3]Offensive collateral estoppel "occurs when a plaintiff seeks to prevent a defendant from litigating issues which the defendant has previously litigated unsuccessfully in an action against another party." *Whitehall Co.* v. *Barletta*, 404 Mass. 497, 501 n.9 (1989).

[4]Much depends on whether there are dangerous levels of lead in an owner's premises which the owner fails to remove. General Laws c. 111, § 199, "provides for strict liability, that is, liability without proof of fault beyond the owner's noncompliance with statutory requirements for the removal of materials containing dangerous levels of lead." *Bencosme* v. *Kokoras*, 400 Mass. 40, 42 (1987). General Laws c. 111, § 197, describes the

owners of the property, the first floor of which was rented to the Smola family. On October 29, 1990, Joel Hollis of the DPH childhood lead poisoning prevention program (CLP) performed a lead inspection of the property, and he wrote up a "Lead Inspection Report."

On October 31, 1990, CLP issued its order to correct violation (order). The order, as it appears in the record appendix, is also a report of the "State laboratory for lead paint and lead poisoning detection"; it recites that an inspector had "determined certain portions [of the property] . . . to be in violation of" G. L. c. 111, § 197, and the State Sanitary Code, 105 CMR 400.000 (1986), and the lead poisoning prevention and control regulations described in 105 CMR 460.000 (1989). CLP declared an emergency, see G. L. c. 111, § 198, and ordered the defendants "to remedy [the]. . . violation within 10 (ten) days of receipt" of the order.[5] The order warned of criminal prosecution and civil punitive damages in the event of noncompliance. The defendants complied with the order.

Section 460.900 of title 150 of the State Sanitary Code (1989) provides for hearings as follows: "If a hearing is requested under the [State] Sanitary Code . . . and if the owner has complied with the Order to Correct Violation(s) as required by these regulations, the hearing shall be provided within 10 days of request for the hearing. . . . Because violations of M.G.L. c. 111, §§ 196 and 197, are considered emergency matters pursuant to § 198, no administrative hearing

owner's obligation to remove materials containing dangerous levels of lead, and that obligation exists whether or not the premises have been inspected pursuant to G. L. c. 111, § 194. See *id.* at 42 n.4. That *Bencosme* refers to an earlier version of the statute is not material.

[5]The plaintiff's supplemental appendix includes portions of a hospital record of the minor plaintiff. She was admitted to the Medical Center of Central Massachusetts on October 26, 1990, three days before the inspection. The discharge summary states that she was admitted "with a chief complaint of lead poisoning. . . . Mother noted the baby at the window with paint chips in the mouth three weeks ago." The discharge summary concludes that at the time of discharge on October 31, 1990, "[t]he patient was stable . . . her prognosis was excellent."

The appendix also includes an opinion letter dated May 9, 1994, from William G. Bithoney, M.D., of Children's Hospital in Boston, to counsel to the plaintiff. The letter concludes, in part, that "it is my impression that [the child] has suffered from severe lead poisoning during a critical period of brain growth."

shall be held in connection with any violation of M.G.L. c. 111, § 197, except pursuant to this regulation."

The defendants did not request a hearing.

*Discussion.* Collateral estoppel is "known as issue preclusion . . . ."[6] *Aetna Cas. & Sur. Co.* v. *Niziolek*, 395 Mass. 737, 742 (1985) (collateral estoppel is available to a civil plaintiff where there has been a preceding criminal proceeding and without regard to the absence of mutuality of estoppel). Its use offensively is "generally accepted." *Bar Counsel* v. *Board of Bar Overseers*, 420 Mass. 6, 9 (1995). However, "[b]efore the doctrine of collateral estoppel can be used offensively, the fact finder should be afforded wide discretion in determining whether to do so would be fair to the defendant." *Id.* at 11. "Fairness is the decisive consideration" in the use of offensive collateral estoppel. *Aetna Cas. & Sur. Co.*, *supra* at 745. The Massachusetts rule is that "absent mutuality of estoppel and technical privity. . . [the court] would rarely allow collateral estoppel to be applied to a prior judgment offensively . . . ." *Whitehall Co.* v. *Barletta*, 404 Mass. 497, 502 (1989).[7]

Whether it would be appropriate, or fair, to permit the plaintiff to invoke the doctrine of offensive collateral estoppel in this case is, however, an issue we need not decide for the pertinent statute determines the result.

General Laws c. 111, § 195, as inserted by St. 1973, c. 149, provides, in part, that a certified copy of any report of the

---

[6]Issue preclusion is available in the field of administrative law, but only if there has been an adjudicatory proceeding. See *Stowe* v. *Bologna*, 415 Mass. 20, 22 (1993) ("[a] final order of an administrative agency in an adjudicatory proceeding, not appealed from and as to which the appeal period has expired, precludes relitigation of the same issues between the same parties, just as would a final judgment of a court of competent jurisdiction"). General Laws c. 30A, § 1, defines "adjudicatory proceeding" as "a proceeding before an agency in which the legal rights, duties or privileges of specifically named persons are required by constitutional right or by any provision of the General Laws to be determined *after* opportunity for an agency hearing" (emphasis added). It is doubtful that there was an "adjudicatory proceeding" in this case, but the point has not been argued, and for the reasons stated in the text, we need not consider the issue.

[7]Offensive collateral estoppel is closely related to the evidentiary rule regarding admissions. See *LePage* v. *Bumila*, 407 Mass. 163, 167 n.4 (1990) (plaintiff's payment of a $40.00 noncriminal traffic fine cannot be considered an admission in a later civil trial, and it would be unfair to apply offensive collateral estoppel to those facts).

State laboratory for lead and lead poisoning detection, "shall be admissible in any judicial proceeding without further authentication . . . and *shall be prima facie evidence of the facts stated therein"* (emphasis added).

"Prima facie evidence . . . casts the burden of production upon the opponent. In the absence of contradictory evidence, prima facie evidence compels a finding in accordance therewith in civil cases. . . . [P]rima facie evidence does not 'disappear' upon being rebutted, but rather remains as evidence sufficient to get the case to the jury." Liacos, Massachusetts Evidence § 5.8.5, at 236-237 (6th ed. 1994) (citations omitted).

The judge's ruling that an order to delead premises based on a qualified laboratory report *precludes* the introduction of rebuttal evidence challenging that report in a subsequent civil action solely because the order is unchallenged and unappealed, defeats the express legislative intent to make the report merely prima facie evidence, thereby *permitting* the introduction of rebuttal evidence. Contrast the clearly expressed legislative intent regarding the conclusiveness of certain evidence in G. L. c. 140D, § 33 (written acknowledgment of receipt "shall be conclusive proof of the delivery"); G. L. c. 201B, § 5 (affidavit of attorney in fact as to his lack of knowledge regarding the termination of his power "shall be conclusive proof of the nonrevocation or nontermination of the power"). *Lezberg* v. *Rogers,* 27 Mass. App. Ct. 1158, cited by the judge, arises in a different factual and statutory context, and is inapposite.

Indeed, the plaintiff's brief abandons the judge's reasoning. The plaintiff acknowledges that the laboratory report is admissible as prima facie evidence, and makes no argument that in this case the report is *conclusive* evidence of the facts stated therein. Instead the plaintiff argues that the defendants' proffered evidence is substantively inadequate and does not present any genuine issue of material fact on the issue of liability.

On the basis of the summary judgment record before us, we disagree. In addition to the question whether the inspection conformed to the applicable regulations, there is a genuine issue of material fact as to whether the child's injuries were "caused by" the lead in the apartment. The defendant proffered the affidavit of a biochemical toxicologist wherein he opined that, based on his review of the plaintiff's medical records, there is no basis for the allegation that the lead alleg-

edly in the apartment was a substantial contributing source of the alleged lead poisoning of the plaintiff.

We conclude that there are issues of material fact which must be resolved at trial.

We answer the question in the negative, see *Lyons* v. *Globe Newspaper Co.*, 415 Mass. 258, 261 at n.4 (1993), and we reverse the partial summary judgment.

*So ordered.*