COMMONWEALTH *vs.* TWO PARCELS OF LAND[1]; OCEANVIEW ASSOCIATES, INC., & others,[2] interveners.

No. 97-P-1790.

Plymouth. January 13, 1999. - March 2, 2000.

Present: BROWN, DREBEN, & BECK, JJ.

*Practice, Civil,* Summary judgment, Forfeiture proceeding. *Collateral Estoppel. Forfeiture Proceeding. Due Process of Law,* Forfeiture proceeding.

In an in rem forfeiture proceeding brought by the Commonwealth against certain real property that was the site of numerous cocaine transactions, summary judgment was correctly entered in favor of the Commonwealth, where the only issue of material fact, the knowledge of and condonation of drug activity on the premises by the bar's licensee-owner, had been finally adjudicated in a prior liquor license revocation proceeding to which the owner had been a party: use of the prior determination to collaterally estop relitigation of the same issue was not unfair in the circumstances. [696-700]
A four and one-half year delay between the filing of the complaint and the entry of judgment in a forfeiture action was not demonstrated to be unreasonable in the circumstances; nor did the owners of the property demonstrate that they were prejudiced by the delay. [700-702]
The beneficiary of a trust that held property who was also a stockholder of the corporation that operated a business on the property did not demonstrate an ownership interest sufficient to confer standing to contest a forfeiture action brought by the Commonwealth against the property, which was the site of numerous drug transactions. [702-703]

CIVIL ACTION commenced in the Superior Court Department on September 15, 1992.

A motion for summary judgment was heard by *Patrick F. Brady,* J.

---

[1]The complaint sought forfeiture of all buildings and improvements on the property, all appurtenances and attachments, business equipment, and the liquor license granted to Oceanview Associates, Inc.

[2]John F. Riley, individually and as trustee of Riley Realty Trust, and Marie E. Riley.

*John H. Wyman* for the interveners.

*Mary L. Amrhein*, Assistant District Attorney, for the Commonwealth.

BECK, J. In this in rem forfeiture action, the defendant interveners, Oceanview Associates, Inc., and John F. and Marie E. Riley, appeal from a Superior Court decision allowing the Commonwealth's motion for summary judgment. The property in question is a bar that was the site of numerous cocaine transactions. The interveners are, respectively, the corporation that held the liquor license and operated the bar and the trustee and the beneficiary of the realty trust that owns the property. Their primary claims of error concern the application of offensive collateral estoppel in the forfeiture action and the delay in litigating it. We affirm.

*Procedural history.* From September 6, 1991, through July 29, 1992, Raynham police Officer Louis Pacheco, working with the Olde Bridgewater regional drug task force, participated in an undercover narcotics investigation in Plymouth county. The investigation included a bar called Illusions, located at 65 School Street in Pembroke. The registered owner of the property is the Riley Realty Trust. Intervener John Riley was the trustee of the trust; his wife, Marie Riley, was the beneficiary of the trust. The corporation Oceanview Associates, Inc. (Oceanview), operated Illusions. John Riley was the president and treasurer of the corporation; Marie Riley was the clerk; and both Rileys were stockholders.

In late July, 1992, the narcotics task force made seventeen arrests in connection with its investigation, including arrests of two people at Illusions. Neither John nor Marie Riley was arrested or charged. On September 15, 1992, the Commonwealth filed this in rem proceeding, seeking forfeiture of the real property on which the bar was located, the bar and the equipment and improvements associated with it, and the liquor license. Within three days of filing the complaint, the Commonwealth sent the Rileys notice of its motion for a lis pendens pursuant to the forfeiture action. The Rileys and Oceanview filed a motion to intervene on January 22, 1993. At the same time, they also filed a motion to vacate an October 14, 1992, ex parte order to secure and hold the property. See G. L. c. 94C, § 47(*f*). A year later, on January 27, 1994, a Superior Court judge held a hearing and denied the motion to vacate but allowed the motion to intervene. The Rileys and Oceanview filed their answer to the complaint the same day.

Apparently in the fall of 1992, shortly after the Commonwealth filed the forfeiture action, the Alcoholic Beverages Control Commission (ABCC) instituted proceedings to revoke Illusions' liquor license pursuant to 204 Code Mass. Regs § 205(2) (1992) for violation of G. L. c. 94C, the Controlled Substances Act. After remand of Oceanview's appeal from a decision to revoke the license, a second hearing was held on November 17, 1994. On January 12, 1995, the ABCC issued a second decision revoking the license. Oceanview sought review of this decision in Superior Court; a judge of that court found against the ABCC on February 27, 1996. The ABCC appealed the Superior Court's decision to this court. On February 10, 1997, we affirmed the ABCC action in a decision pursuant to our Rule 1:28. The Supreme Judicial Court denied further appellate review on March 28, 1997.

Meanwhile, after the Rileys and Oceanview filed their answer in this case in January, 1994, nothing was heard from either party in the forfeiture action until June, 1995. At that point the interveners filed a second motion to vacate the preliminary order because they had a possible buyer for the bar. A Superior Court judge allowed the motion with certain conditions. The Commonwealth filed a notice of appeal, and then motions to reconsider and to stay the proceedings. The Commonwealth's motions were denied, and apparently the sale ultimately fell through. The next activity in the forfeiture action was the Commonwealth's motion for a jury trial, filed in December, 1996.

On May 2, 1997, more than four and one-half years after filing the forfeiture complaint, the Commonwealth moved for summary judgment on the ground that "there has been a final adjudication of the only disputed issue of material fact in the case . . . ." In its memorandum in support of the motion, the Commonwealth cited the ABCC's finding that " 'the licensee knew of, and permitted illegal drug activity to take place on the premises' and . . . 'took no meaningful action to prevent drug activity on the premises.' " A Superior Court judge allowed the Commonwealth's motion for summary judgment on the ground that "[t]he issue of John F. Riley's knowledge of illegal drug activity on the premises was adjudicated [in the ABCC liquor license revocation proceeding]." Citing *Martin* v. *Ring*, 401 Mass. 59 (1987), he ruled that John Riley "had full dominion and control over the [Illusions] property" and that "[c]ollateral estoppel bars relitigation of the issue of Riley's knowledge of

the illegal use of the premises." He also ruled, citing *Commonwealth* v. *One 1986 Volkswagen GTI Automobile*, 417 Mass. 369 (1994), that Marie Riley had neither dominion nor control over the property and therefore had no standing to relitigate the issue of her husband's knowledge.

On appeal, the interveners appear to be making the following arguments. First, they claim it was unfair to apply to the forfeiture action the ABCC's findings that John Riley knew about the narcotics activity at the bar. Second, they claim that the delay in bringing the forfeiture case to conclusion was a denial of due process. Finally, they argue that Marie Riley should be given the opportunity to present an innocent owner defense. They also make an argument under the Eighth Amendment to the Federal Constitution.

*Summary judgment standard.* Summary judgment is granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as matter of law. *Community Natl. Bank* v. *Dawes*, 369 Mass. 550, 553 (1976). Mass. R.Civ.P. 56(c), 365 Mass. 824 (1974). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue. *Pederson* v. *Time, Inc.*, 404 Mass. 14, 16-17 (1989). "If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion . . . ." *Id.* at 17. "[W]hen a motion for summary judgment is made and properly supported, the nonmoving party may not simply rest on pleadings, 'but [must respond] by affidavits or as otherwise provided in [Mass.R.Civ.P. 56 and] must set forth specific facts showing that there is a genuine issue for trial.' " *Correllas* v. *Viveiros*, 410 Mass. 314, 317 (1991), quoting from Mass.R.Civ.P. 56(e), 365 Mass. 825 (1974). Mere assertions of the existence of disputed facts without evidentiary support cannot defeat the summary judgment motion. *LaLonde* v. *Eissner*, 405 Mass. 207, 209 (1989). See *Bergendahl* v. *Massachusetts Elec. Co.*, 45 Mass. App. Ct. 715, 718-719 (1998), cert. denied, 120 S. Ct. 326 (1999).

*Collateral estoppel.* In support of its motion for summary judgment, the Commonwealth submitted, among other things, an affidavit of Officer Pacheco with his police reports attached and the findings of the ABCC. In the appeal of the ABCC action, we determined that there was substantial evidence to sup-

port the agency's findings that Illusions was used to sell drugs and that John Riley knew it. Those findings were as follows.

Between September, 1991, and July, 1992, Pacheco observed numerous incidents of illegal narcotics use and sale at Illusions. He also purchased illegal narcotics on a number of occasions. On or about July 1, 1992, John Riley told Pacheco that he had thrown the drug dealers out of his bar because Riley had not benefited from the sales. Riley offered Pacheco the opportunity to sell drugs in his bar if Pacheco would give him a cut of either the money or the narcotics. Riley denied the conversations, but the ABCC explicitly found Riley's testimony to be "not credible."

The Commonwealth moved for summary judgment on the ground that there was no genuine issue of material fact because the ABCC had resolved the only undecided material question in the forfeiture action, i.e., whether Riley knew about and condoned the narcotics activity at his bar. The interveners claim that it would be unfair to use these findings against them in the forfeiture action because the ABCC had before it and referred in their findings to hearsay evidence that would not have been admissible in the forfeiture action. Before addressing this argument, we briefly discuss the concept of offensive collateral estoppel.

"Offensive collateral estoppel 'occurs when a plaintiff seeks to prevent a defendant from litigating issues which the defendant has previously litigated unsuccessfully in an action against another party.' " *Smola* v. *Higgins*, 42 Mass. App. Ct. 724, 725 n.3 (1997), quoting from *Whitehall Co.* v. *Barletta*, 404 Mass. 497, 501 n.9 (1989). "In appropriate circumstances . . . the offensive use of collateral estoppel is a generally accepted practice in American courts" and has been applied in Massachusetts. *Haran* v. *Board of Registration in Medicine*, 398 Mass. 571, 577 (1986) (finding no error in revocation of doctor's Massachusetts license on basis of revocation proceedings in New York State concerning his New York State license). See *Bar Counsel* v. *Board of Bar Overseers*, 420 Mass. 6, 11 (1995). See also *Aetna Cas. & Sur. Co.* v. *Niziolek*, 395 Mass. 737, 745 (1985); *Brunson* v. *Wall*, 405 Mass. 446, 450 (1989). "Before a party will be precluded from relitigating an issue, a court must determine that (1) there was a final judgment on the merits in the prior adjudication; (2) that the party against whom preclusion is asserted was a party (or in privity with a party) to the

prior adjudication; and (3) the issue in the prior adjudication was identical to the issue in the current adjudication." *Tuper* v. *North Adams Ambulance Serv., Inc.,* 428 Mass. 132, 134 (1998). In such a case, the court must also find that the party to be estopped had a "full and fair opportunity to litigate the issue in the first action." *Brunson* v. *Wall,* 405 Mass. at 451. " 'Fairness is the decisive consideration' in the use of offensive collateral estoppel." *Smola* v. *Higgins,* 42 Mass. App. Ct. at 727, quoting from *Aetna Cas. & Sur. Co.* v. *Niziolek,* 395 Mass. at 745. See generally Restatement (Second) of Judgments §§ 27-29 (1982). The question for us is whether the court committed an error of law when it allowed the application of offensive collateral estoppel in these circumstances. We conclude it did not.

The use of the ABCC findings in the forfeiture case satisfies all of the specific requirements set out above. There was a final judgment, including a full appeal; although Oceanview was the named party in the ABCC proceedings, the Rileys are the owners and officers of Oceanview; the issue of John Riley's knowledge of the narcotics activity is identical; and the Rileys as the owners and officers of Oceanview had a full and fair opportunity to litigate. The record before this court in the appeal of the liquor license revocation indicates that Pacheco testified and was available for cross-examination. John Riley also testified. Moreover, the Rileys as owners and officers of Oceanview had "every incentive" to contest the revocation proceedings "vigorously" since the value of the business would depend on the liquor license. *Aetna Cas. & Sur. Co.* v. *Niziolek,* 395 Mass. at 745.

The interveners point to Restatement (Second) of Judgments § 29(2) (1982) in support of their argument that the use of hearsay in the ABCC hearing entitled them to relitigate the issue of John Riley's knowledge in the forfeiture action. That subsection provides that, in determining whether a party is precluded from relitigating an issue with another party, the court should consider whether

> "[t]he forum in the second action affords the party against whom preclusion is asserted procedural opportunities in the presentation and determination of the issue that were not available in the first action and could likely result in the issue being differently determined."

See Restatement (Second) of Judgments § 83 comment c, at

272 (1982) (in determining the preclusive effect of an administrative proceeding, "[i]t can be relevant that the agency determination was based on evidence that would be inadmissible in judicial proceedings").

The interveners claim that "hearsay evidence . . . weighed heavily on the ABCC in its determination of his knowledge of the activities at Illusions." They do not, however, set out particular examples of damaging hearsay. Pacheco's testimony about what he overheard at the bar established that there was drug dealing at the bar, but the interveners do not dispute that fact; it is the Rileys' knowledge of the narcotics activity that is at issue. Pacheco did testify about statements of John Riley that were introduced for the truth of the matter asserted. However, these statements were statements of a party opponent and admissible in any proceeding on that ground. See Liacos, Avery & Brodin, Massachusetts Evidence § 8.8 (7th ed. 1999). Only one of the thirty-six ABCC findings refers to a statement of a bar patron about John Riley's attitude toward the drug activity in his bar. To the extent that this testimony would not have been admissible in the forfeiture proceedings, its exclusion would not likely have "result[ed] in the issue being differently determined." Restatement (Second) of Judgments § 29(2) (1982). The evidence of Riley's tolerance of the drug dealing in his bar was overwhelming.

We also note that we are not faced here with any question of "disparate burdens of proof . . . in the two proceedings." *Bar Counsel* v. *Board of Bar Overseers*, 420 Mass. at 12. See *In re Case of Bruzga*, 142 N.H. 743, 746 (1998) (doctrine of collateral estoppel may be applied in attorney discipline proceedings when prior proceeding subject to burden of proof equaling or exceeding the burden governing disciplinary proceedings). See also Restatement (Second) Judgments § 28(4) (1982) (Exceptions to the general rule of preclusion include cases in which "[t]he party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; the burden has shifted to his adversary; or the adversary has a significantly heavier burden than he had in the first action"). At the ABCC administrative hearing, the Commonwealth was required to prove by "substantial evidence," G. L. c. 30A, § 1(6), as inserted by St. 1954, c. 681, § 1, and § 14(7)(e), as appearing in St. 1973, c. 1114, § 3, that Riley knew of the narcotics activ-

ity at his bar, whereas the probable cause necessary in the forfeiture proceeding required proof of "sound reason to believe that [a] money-drug nexus exist[ed]." *Commonwealth* v. *Fourteen Thousand Two Hundred Dollars*, 421 Mass. 1, 9 (1995). It was not unfair to preclude the interveners from relitigating John Riley's knowledge of the drug activity.

The interveners also seem to argue that because the ABCC issued its findings during the long delay in the forfeiture action, it would be unfair to use the findings in the forfeiture proceeding. In addition, they argue that Marie Riley was not a party to the ABCC proceedings and therefore should have an opportunity to present her innocent owner defense. See G. L. c. 94C, § 47(c)(3). We deal with the delay, as well as Marie Riley's standing below.

*The delay.* As set out in detail above, more than four and one-half years passed between the filing of the complaint for forfeiture and the entry of summary judgment. The interveners argue that this long delay was unreasonable under the forfeiture statute and constituted a denial of their constitutional due process rights.

General Laws c. 94C, § 47(d), as appearing in St. 1989, c. 653, § 79, requires the court to " 'promptly . . . hold a hearing on [a forfeiture] petition.' Regarding such actions, the Commonwealth has a duty to institute proceedings and carry them through with reasonable dispatch." *Commonwealth* v. *One 1978 Ketch Named "Snow White,"* 23 Mass. App. Ct. 399, 401 (1987). The Commonwealth has the initial "burden of proving to the court the existence of probable cause to institute the action." G. L. c. 94C, § 47(d). Once the Commonwealth has met its burden, a party contesting the forfeiture has "the burden of proving that the property is not forfeitable . . . ." G. L. c. 94C, § 47(d). See *Commonwealth* v. *Fourteen Thousand Two Hundred Dollars*, 421 Mass. at 9 (if the Commonwealth proves probable cause to proceed with a forfeiture action, it "acts responsibly by instituting the action and leaving to a claimant the statutory burden of proving entitlement to the property at issue").

The United States Supreme Court set out a four-part balancing test for determining whether delay in instituting a forfeiture action is reasonable in *United States* v. *Eight Thousand Eight Hundred and Fifty Dollars ($8,850)*, 461 U.S. 555, 564-565 (1983), based on the speedy trial test of *Barker* v. *Wingo*, 407

U.S. 514 (1972). The factors are the length of delay, the reason for the delay, the claimant's assertion of his rights, and prejudice to the defendant. *Barker* v. *Wingo*, 407 U.S. at 530. This test does not strictly apply here, where the forfeiture action had already been brought, because "once the [forfeiture] action has been initiated, the claimant may readily apply for a hearing." *Commonwealth* v. *One 1978 Ketch Named "Snow White,"* 23 Mass. App. Ct. at 402. Compare *United States* v. *Eight Thousand Eight Hundred and Fifty Dollars ($8,850)*, 461 U.S. at 569 ("claimant is able to trigger rapid filing of a forfeiture action if he desires it" by filing an equitable action seeking return of the seized property or by "request[ing] the Customs Service [to] refer the matter to the United States Attorney").

"Whether delay is reasonable calls for a determination of fact." *Commonwealth* v. *Goldman*, 398 Mass. 201, 203 (1986). In the context of a motion for summary judgment, once the Commonwealth established probable cause to forfeit the property, it was the interveners' burden to set forth admissible evidence to prove that the delay was unreasonable. Although the delay itself is the "triggering mechanism," *United States* v. *Eight Thousand Eight Hundred and Fifty Dollars ($8,850)*, 461 U.S. at 565 (quoting from *Barker* v. *Wingo*, 407 U.S. at 530) it is not, by itself, sufficient to support a claim of unreasonableness. *Ibid.*

"Some 'current, definite reaction by the claimant to governmental delay may be demanded if he is later to complain of it.' " *Commonwealth* v. *One 1978 Ketch Named "Snow White,"* 23 Mass. App. Ct. at 402, quoting from *Commonwealth* v. *One 1976 Cadillac DeVille Auto.*, 380 Mass. 411, 421 (1980). The docket sheet does not reflect any effort on the interveners' part "to register objection." *Commonwealth* v. *One 1977 Cadillac Eldorado Auto.*, 380 Mass. 423, 426 (1980). Contrary to their argument, neither of their motions to vacate the preliminary order to secure and hold satisfies their responsibility to assert their rights to timely resolution of the dispute. The first motion, filed with their motion to intervene in January, 1993, simply claimed they would be irreparably harmed by the forfeiture proceeding. There is nothing in the record to suggest that the interveners raised the issue of delay at the hearing on that motion. The second motion to vacate, filed in June, 1995, although mentioning that "the [Commonwealth] has done nothing to bring the matter to the Court's attention for any action consistent

with its Complaint," did not request any relief on that ground; the goal of the second motion was to facilitate the alleged pending sale of the property.

Moreover, the interveners have not made any showing that they were prejudiced by the delay. See *Commonwealth* v. *One 1978 Ketch Named "Snow White,"* 23 Mass. App. Ct. at 402. See also *United States* v. *Eighteen Thousand Five Hundred and Five Dollars and Ten Cents*, 739 F.2d 354, 356 (8th Cir. 1984) (prejudice in this context refers to delay resulting in the claimants' inability to adequately defend their case). Indeed, without citation to supporting materials in the record, the interveners simply argue that "five years, with likely prejudice to them, is unreasonable." They have failed to establish the existence of a genuine issue of material fact entitling them to trial on the delay issue.

*Marie Riley's standing.* In allowing the Commonwealth's motion for summary judgment, the Superior Court judge, citing *Commonwealth* v. *One 1986 Volkswagen GTI Auto.*, 417 Mass. 369 (1994), concluded that Marie Riley "has no standing to relitigate the issue of her husband's knowledge." Referring to Marie Riley's affidavit, the judge ruled, "That [Marie Riley] may have owned shares in the corporation and was a beneficiary of the trust are irrelevant. The key is dominion and control; she evidently had none with respect to the property." There was no error.

*Commonwealth* v. *One 1986 Volkswagen GTI Auto.*, *supra*, stands squarely for the principles for which the motion judge cited it. It was Marie Riley's burden to establish her standing to contest the seizure and forfeiture of the property. *Id.* at 373-374. G. L. c. 94C, § 47(*a*) & (*d*). In her affidavit, Marie Riley claims an ownership interest in the property by virtue of being a stockholder in Oceanview Associates, Inc., and the beneficiary of the Riley Realty Trust, but she acknowledges that she "did not involve [herself] in the day-to-day operation of Oceanview Associates, Inc. which operated a bar/lounge within the premises . . . ." Nor, she says, did she know about the activities at the bar. The terms of the trust give the trustees "full power to deal in or with the trust estate," including disposition of the property. The beneficiary's power appears to be limited to terminating the trust at any time.

"In determining whether . . . an ownership interest [sufficient to contest a forfeiture] exists, the '[c]ourts generally look

to indicia of dominion and control such as possession, title and financial stake.'·'' *Commonwealth* v. *One 1986 Volkswagen GTI Auto.*, 417 Mass. at 374, quoting from *United States* v. *One 1981 Datsun 280ZX*, 563 F. Supp. 470, 474 (E.D. Pa. 1983). In the case of *Commonwealth* v. *One 1986 Volkswagen GTI Auto.*, *supra*, although the defendant's mother had apparently bought the car and held legal title to it, the son was the owner "in fact." He regularly used the car (it was parked at his address in the town where he lived rather than at his mother's address in another city), and he had added an "elaborate sound system" to the car. *Id.* at 370-371. It was he who would "suffer the loss occasioned by the forfeiture." *Id.* at 375, quoting from *United States* v. *One 1971 Porsche Coupe Auto.*, 364 F. Supp. 745, 748 (E.D. Pa. 1973). The Supreme Judicial Court held that these indicia of control established the son rather than the mother as the "owner" for purposes of the forfeiture statute. *Commonwealth* v. *One 1986 Volkswagen GTI Auto.*, 417 Mass. at 375-376. "[A] person with a financial stake in an automobile does not possess a sufficient ownership interest to contest its forfeiture unless the person also exercises dominion and control over the vehicle." *Ibid.* The "failure to look beyond bare legal title would foster manipulation of nominal ownership to frustrate [the] intent [of the forfeiture statute]." *Id.* at 374. This principle applies as well to Marie Riley's limited beneficial interest.

Finally, the interveners claim that forfeiture of the property would constitute cruel and unusual punishment under the Eighth Amendment to the Federal Constitution. As the Commonwealth points out, it appears that the interveners failed to raise this issue below either as an affirmative defense in their answer or in their opposition to the Commonwealth's motion for summary judgment. In any case, there is nothing before us on which either the Superior Court judge or we could base a decision as to whether the forfeiture of Illusions is cruel and unusual punishment. See *United States* v. *Bucuvalas*, 970 F.2d 937, 945-946 (1st Cir. 1992), cert. denied, 507 U.S. 959 (1993).

*Judgment affirmed.*