Kottmyer, J.
The matter came before the Court for trial without a jury on the plaintiff, Diep Bui’s, appeal, pursuant to G.L.c. 239, §5 and c. 231, §97, from an adverse judgment of the Dorchester District Court in a summary process action she brought against defendant, Ha T. Ma. After trial, I make the following findings of fact and conclusions of law.
FINDINGS OF FACT
1) Plaintiff Diep Bui is the owner of property at 1153-1611 Dorchester Avenue, Dorchester (“the Property”).
2) By deed dated November 1, 1989, Royce Realty Trust, Joseph J. Grassello, Trustee, purchased the Property. Maria Miara and Richard Miara were the beneficiaries of the Royce Realty Trust. On the same date, Grassello gave a mortgage on the property to US Trust in the principal amount of $600,000.
3) On or about March 30, 1994, defendant Ha T. Ma entered into a lease with Royce Realty Trust for a portion of the property consisting of approximately 1,500 sq. ft. of commercial space at the street level (“the Lease”). The Lease was for a term of three and one-half years ending on November 30, 1997 “with options of five years and five years. ” The Lease provides for rent of $1,500 per month or $18,000 per year “the first year” and in paragraph 23 that “[a]fter the first year the rent will increase up to 3% per year.”
4) The Lease was not recorded in the registry of deeds.
5) Ha T. Ma has operated a Vietnamese restaurant at the leased premises since March 1994.
6) On November 9, 1994, US Trust recorded a notice of foreclosure on the mortgage. After an auction, the property was sold by US Trust by foreclosure deed to Atlantic Realty Trust, Keith Kiper, Trustee, on April 10, 1996. Kiper as Trustee granted a mortgage on the property to US Trust in the amount of $440,000. This mortgage was discharged on April 26, 1996.
7) On April 26, 1996, Athena Grassello replaced Keith Kiper as the sole trustee of the Atlantic Realty Trust. Atlantic Realty Trust declared the Far East Condominiums consisting of nine units. The space occupied defendant Ha T. Ma became Unit 3. Exhibit C of the Master Deed entitled “Title Conditions," which was recorded, provides in part:
The Far East Condominium Units shall be sold subject to and with the benefit of the following matters:
*568 3. Rights or claims of tenants at will without option to purchase. Said Tenancy is not under a written lease and possession is from month to month only.
8) On April 29, 1996, Atlantic Realty Trust notified all tenants at 1153-1161 Dorchester Avenue that it was the new owner of the premises and that all rents should be paid to it.
9) By letter dated May 1, 1996, Grassello, Trustee of the Atlantic Realty Trust, notified all tenants of 1153-1161 Dorchester Avenue, including Ha T. Ma, that the Property had been converted to condominiums and the tenants could purchase their units if they desired. (Ex. 2.) The letter also stated “Atlantic Realty Trust is not beginning or continuing any lease that may or may not be in effect. All tenants are a tenant at will (sic) and may continue until this unit is sold.”
10) On December 17, 1996, Ha T. Ma formed Hau Giang Restaurant, Inc., a Massachusetts corporation, for the purpose of carrying on the business of a restaurant. Ha T. Ma purported to assign her interest in the lease to the corporation which thereafter operated the restaurant. Ha T. Ma did not obtain the lessor’s written approval of the assignment as required by paragraph 13 of the Lease. (Exs. 21, 22. J[1]
11) On March 11, 1997, Ha T. Ma sent a letter to Atlantic Realty Trust stating:
This letter constitutes notice to you that I hereby exercise the extension option under the lease dated March 28, 1994 for another five (5) years commencing on December 1, 1997 and expiring on November 30, 2002.
(Ex. 3.) By letter dated April 7, 1997, Atlantic Realty-Trust responded, enclosing a copy of its May 1, 1996 letter, and stating that there was no lease in effect. A copy of the letter was sent to John Collier. (Ex. 4.)
12) Ha T. Ma and Hau Giang Restaurant, Inc., paid rent to Atlantic Realty Trust at the rate of $1,545.00 per month. At no time, did Atlantic Realty Trust notify Ha T. Ma or the Hau Giang Restaurant, Inc. of any increase in the rent pursuant to the rent escalation clause.[2]
13) On April 29, 1997, Diep P. Bui and Tam V. Bui submitted an offer to purchase Units 2 and 3 of the Far East Condominiums. The units were adjacent and the Buis planned to combine the two and to open a Vietnamese restaurant. The offer was subject to the condition that the units be “vacant” at the closing. Atlantic Realty Trust accepted the offer on May 1, 1997. (Ex. 5.)
14) On July 21, 1997, Diep P. Bui and Tam V. Bui entered into a Purchase and Sale Agreement with Atlantic Realty Trust to purchase Units 2 and 3, for a total sum of $245,000.00. (Ex. 7.) Among other things, the Purchase and Sale Agreement provides:
A)That the premises would be delivered free of tenants and occupants at closing, the seller would commence eviction proceedings, that if the premises were not vacant at the time of the closing, buyers would extend the closing for a period not to exceed six months and that if the premises were not vacant at that time, the seller would pay the buyer a penalty of $ 10,000 and refund all deposits (¶9 and Addendum ¶12);
B) That the seller would deliver clear, marketable and record title (¶ 4); and
C) Rents collected after the closing for the period of time preceding the closing would be apportioned among the parties when collected by the buyer, Diep Bui (¶ 16).
15) On August 1, 1997, attorney John Collier sent Ha L. Ma a 60-day notice to quit the premises on behalf of the owner, Atlantic Realty Trust. (Ex. 8.)
16) The original closing date in the Purchase and Sale Agreement, August 28, 1997, was extended until March 31, 1998.
17) On October 27, 1997, Collier, on behalf of Athena Grasello Trustee, filed a summary process complaint against Ha T. Ma in the Dorchester District Court seeking to evict Ha T. Ma and for unpaid rent. On November 27, 1997, the District Court rendered judgment in favor of the plaintiff and Ha T. Ma appealed. At no time in her answer or at the District Court trial did Ha T. Ma allege that there was a lease or produce a copy of the Lease.
18) Trial de novo of the eviction action was held on February 9, 1998, in the Superior Court before Quinlan, J. Athena Grassello, Trustee of the Atlantic Realty Trust v. Ha T. Ma, Suffolk Civ. Action No. 97-6608C. At that trial, Ha T. Ma produced the Lease. Atlantic Realty Trust admitted that the lease had been prepared by Maria Miara on behalf of Royce and given to Ha T. Ma, but denied that Ha T. Ma had ever accepted the lease byreturning a signed copy to Royce. Collier did not disclose the existence of the alleged lease to plaintiffs or their attorney, Joel Fishman, before the closing. The issue as to the effect on the Lease of US Trust’s foreclosure of its mortgage was not raised in the trial before Judge Quinlan.
19) On March 31, 1998, the closing took place. Collier represented Atlantic and Fishman represented the plaintiffs. The Buis purchased Units 2 and 3 from Atlantic Realty Trust for $245,000. They granted a mortgage in the amount of $85,750 on each of the units to Equity One, Inc. The Buis agreed to close even though Unit 3 was not vacant because they were concerned that they would lose their mortgage commitment if the closing was further postponed.
20) At or immediately before the closing, the parties and Collier as Escrow Agent entered into an Escrow Agreement. (Ex. 10.) The Escrow Agreement provided that $30,000 from the sale proceeds would be placed in escrow “to guarantee the legal eviction by court order of tenant, Hau Giang Restaurant.” The agreement provided for the use of the escrow funds to pay *569 the costs of eviction. In the Escrow Agreement, Collier represented that “[h]e obtained a judgment from the Dorchester District Court evicting tenant, which judgment was appealed [and] that the complaint for eviction has been heard on appeal by Judge Quinlan of Suffolk Superior Court and currently is under advisement.” The judgment of the Dorchester District Court and the Superior Court complaint were attached. Neither document referred to the Lease. In the escrow agreement, the seller agreed to indemnity the buyers for any additional costs incurred in connection with the eviction.
21) When they purchased Unit 3, plaintiffs knew that Ha T. Ma was the tenant in Unit 3 and believed that she was a tenant at will. They did not have actual knowledge of the Lease. When they purchased Unit 3 and at all times since, plaintiffs have informed defendant in writing and by their conduct that they wanted to evict Ha T. Ma and the Hau Giang Restaurant from Unit 3 and, by implication, would not voluntarily enter into a tenancy with Ha T. Ma or the Hau Giang Restaurant which granted any rights in the premises beyond those of a tenant at will.
22) On April 15, 1998, this Court (Quinlan, J.) issued findings and rulings in Athena Grassello, Trustee of the Atlantic Realty Trust v. Ha T. Ma, Suffolk Civ. Action No. 97-6608C. The Court found that the Lease was valid as to Atlantic Realty Trust because its beneficiaries had actual notice of the lease. Because the lease was valid, the notice to quit did not terminate the lease and judgment entered in favor of Ha T. Ma.
23) The Lease provides in part at paragraph 8: “The lessee shall use the leased premises only for the purposes of a ‘coffee shop, bakery, and deli.’ The lessee shall be responsible for obtaining any permit or license from the City if required. Not to compete: with Mr. Le Restaurant and Far East Market.” Mr. Le Restaurant was a Thai restaurant.
24) At all times, since the defendant has been occupying the premises, she has operated a Vietnamese restaurant. At no time, has the menu or manner of service changed. Since it was formed in December 1996, the Hau Giang Restaurant, Inc., has operated a Vietnamese restaurant in the premises.
25) By letter dated May 29, 1998, which is not in the record, John Bacon, attorney for Ha T. Ma, sent a copy of Judge Quinlan’s decision and the Lease to Fishman. On June 9, 1998, Fishman wrote to Bacon. He noted that Judge Quinlan had left certain issues open as to the validity of the Lease, but (inexplicably) went on to notify Bacon that Ha T. Ma was operating a restaurant in violation of the restriction in ¶ 8 of the Lease and had assigned the Lease without permission in violation of ¶ 13. He further stated that, pursuant to the escalation clause, the rent as of April 1, 1997, should have been $1,639.09.
26) On November 12, 1998, Diep Bui sent a letter to the Hau Giang Restaurant addressed, “Dear lessee.” The letter states: “This letter is to amend the lease contract and will be executed hereafter today (sic).” The purported amendments include a late charge of 10% for payments made after the 5th of the month. Further, the penalty for three late payments is eviction and responsibility of any legal fees which occur. The letter is signed “Diep Bui, Lessor.”
27) On February 2, 1999, the Buis served a Notice to Cease and Desist the operation of the Vietnamese restaurant. When Ha T. Ma failed to comply, the plaintiff filed a civil action for injunctive relief (Bui v Ma, Civil Action No. 99-0897C) seeking to enforce the restriction on use in paragraph 8 of the Lease on February 24, 1999. The motion for a preliminary injunction was denied and the case was voluntarily dismissed on or about March 10, 1999.
28) On February 26, 1999, counsel for Diep Bui, Seth I. Rubinson, served a document entitled “Notice to Quit For Cause” on Ha T. Ma. The notice stated the landlord’s intention to terminate the tenancy. The notice recites that the tenancy is being terminated “due to your breach of Paragraph ‘8’ of your Commercial Lease Agreement” restricting use of the premises. It also references a violation of ¶23 by failing to pay rent in accordance with the rent escalation clause and states that as of April 1,1999, the rent shall be$l,725. On December 15, 1999, Rubinson served a second notice to quit which makes no reference to the Lease.
29) On April 6, 1999, plaintiff filed a summary process complaint in the Dorchester District Court. The complaint and pleadings describe the case as one arising out of defendant’s violation of a lease.
30) Trial was held in the Dorchester District Court on May 6, 1999, and judgment entered for the defendant Ha T. Ma on July 7, 1999. On July 21, 1999, Bui filed a notice of appeal.
31) On August 9, 1999, plaintiff entered the case in this court.
32) On February 14, 2000, the plaintiff amended her summary process complaint. The complaint, as amended, alleges that the tenant is unlawfully on the premises because the tenancy was terminated pursuant to notices to quit served on February 26, 1999 and December 15, 1999.
CONCLUSIONS OF LAW
1) Where a lease is granted after a mortgage, the title of the mortgagee is paramount to that of the lessee. International Paper Co. v. Priscilla Co., 281 Mass. 29 (1932). A defendant in possession under a lease for years from a mortgagor made after the mortgage “has no better title than his lessor and is subject to the same liabilities as the mortgagor in regard to the paramount rights of the mortgagee.” Allen v. Chapman, 168 Mass. 442, 443 (1897). A subsequent lease does not bind the mortgagee and does not affect his *570 rights. Winnisimnet Trustv. Libby, 247 Mass. 560, 563 (1929).
2) A mortgage foreclosure sale and the deed given under it terminates the subsequent lessee’s estate and entitles the purchaser in foreclosure to maintain an action for possession. Barry v. Dudley, 282 Mass. 258, 259-60 (1933).[3]
3) Where no actual entry or threat of eviction is made, but the mortgagee sells the property by foreclosure deed, the sale is an unambiguous exercise of the right of paramount title and terminates the tenancy under the lease. Foreclosure bars in perpetuity the rights of the mortgágor and those claiming under him. See Levin v. Century Indem. Co., 279 Mass 256, 259 (1932).
4) To invoke the doctrine of collateral estoppel, “a court must determine (1) that there was a final judgment on the merits in the prior adjudications; (2) that the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication was identical to the issue in the current adjudication.” Commonwealth v. Two Parcels of Land, 48 Mass.App.Ct. 693, 697-98 (2000), quoting Tuper v. North Adams Ambulance Serv., Inc., 428 Mass. 132, 134 (1998). A court must determine “that the party to the estoppel had a full and fair opportunity to litigate the issue in the first action.” Two Parcels, 48 Mass.App.Ct. at 698, quoting Brunson v. Wall, 405 Mass. 446, 451 (1989).
5) G.L.c. 183, §4, provides that a lease for more than seven years from the making thereof shall not be valid as against any person, except the lessor, his heirs and devisees and persons “having actual notice of it” unless it is recorded in the Registry of Deeds. Where the term of the lease may be extended at the option of the lessee for a total term in excess of seven years, the statute is applicable. South Street Inn, Inc. v Muehsam, 323 Mass. 310, 312 (1948).
6) The “actual notice" required by G.L.c. 183, §4 means more than the knowledge of facts that would put a grantee on inquiry. The statute requires actual notice that a lease exists and actual notice that it is a lease for more than seven years. Id. Knowledge of occupancy by the tenant is insufficient to put a grantee on actual notice as to the nature of the tenancy. Toupin v. Peabody, 162 Mass. 473, 478 (1895). Even knowledge of the existence of the lease is insufficient if the knowledge does not include actual notice of the lease term. South Street Inn, Inc. v. Muehsam, supra, 323 Mass. at 312.
7) A contract which is voidable, but not void can be ratified by conduct. Rosenbloom v. Kaplan, 273 Mass. 411, 416-17 (1930).
8) Acceptance of rents under a lease and attempts to enforce rights under the lease may evidence ratification of the lease and election to be bound. Id.; Carey’s Inc. v. Carey, 25 Mass.App.Ct. 290, 300 at n.2 (1988).
9)A tenant at will must pay the fair value of the use and occupancy of the property. The fair value is not determined by the rent fixed in the lease, but by the reasonable worth of use and occupancy. Lowell Housing Auth. v. Sav-Mor Furniture Stores, Inc., 346 Mass. 426, 430-31 (1963). In general, the rent fixed by a lease is presumed to be the fair value of use and occupancy of the premises. Ghoti Estales v. Freda’s Capri Rest., Inc., 332 Mass. 17, 26 (1955).
DISCUSSION
The Lease is not valid and the plaintiff, Diep Bui, is entitled to possession of the premises for the following reasons.
It is undisputed that the Lease was subordinate to the mortgage to US Trust. The record is silent as to whether Ha T. Ma paid rent directly to US Trust after the notice of foreclosure was recorded. Nonetheless, the act of foreclosure constituted an unambiguous assertion of paramount title which terminated the Lease.[4] Foreclosure is defined as “[a] termination of all rights of the mortgagor or his grantee in the property covered by the mortgage.” Black’s Law Dictionary, 646 (rev 6th ed 1990).
Because the Lease was terminated, i.e. the leasehold estate ceased to exist, neither Atlantic Realty Trust nor Bui could ratify the lease. Even if a terminated lease could be ratified, there is no evidence that US Trust or Atlantic Realty Trust engaged in any conduct which would support a finding of ratification. On the contrary, Atlantic Realty Trust notified Ha T. Ma that she was a tenant at will and that it did not intend to continue any lease.
Diep Bui did not take the property subject to the Lease because she did not have actual or constructive knowledge of the Lease.
Although Diep Bui engaged in conduct which, in other circumstances, could be found to constitute ratification of the Lease, I find that there was no ratification for the following reasons. First, whether viewed as an interest in real estate or as a contract, the Lease had terminated by operation of law. Second, the Buis’ attempts to enforce the lease could not, in context, reasonably be viewed by Ha T. Ma as an election by them to enter into a contract with the defendant on the terms and conditions set forth in the Lease or an election to be bound by the terms of the Lease. At all times after they purchased Unit 3, the Buis’ efforts were unambiguously directed to evicting Ha T. Ma from the premises.
Plaintiff is entitled to the fair value of use and occupancy of the premises. She argues that the fair value is the escalated rent established by the Lease. Although the rent established by agreement is evidence of the value of use and occupancy, the security of a long term lease with options enhanced the value *571 of use and occupancy in the circumstances of this case. Accordingly, I find that plaintiff has not met her burden of proving that the fair value of the use and occupancy of the premises exceeded the rent actually paid by or on behalf of defendant, Ha. T. Ma.
ORDER FOR JUDGMENT
For the reasons stated herein, it is ordered that judgment for possession of Unit 3 at 1153-1157 Dorchester Avenue, Dorchester, Massachusetts, shall enter in favor of plaintiff, Diep Bui.

 Paragraph 13 of the lease provides in part: “The lessee shall not assign or sublet the whole or any part of the leased premises without lessor’s prior written consent.”

 Had the rent been increased to the maximum set forth in the rent escalation provision, the rent for the premises would have been as follows:
04/01/95 to 03/31/96 $1,545 per month, or $18,540 per year.
04/01/96 to 03/31/97 $1,591 per month, or $19,096 per year.
04/01/97 to 03/31/98 $1,639 per month, or $19,669 per year.
04/01/98 to 03/31/99 $1,688 per month, or $20,259 per year.
04/01/99 to 03/31/00 $1,739 per month, or $20,866 per year.
04/01/00 to 03/31/01 $1,791 per month, or $21,492 per year.
04/01/01 to 03/31/02 $1,844 per month, or $12,913 per year.

 If a lease is terminated as the result of an entry for purposes of foreclosure and the tenant wishes to remain in the premises, the tenant may attorn to the mortgagee by paying rent to the mortgagee and acknowledging the mortgagee as its landlord. Where the. tenant attorns to the mortgagee, “a new tenancy is created on the same terms and conditions as the old one, but the tenancy will be a tenancy at will only unless a new lease is thereafter entered into . . . or unless the mortgagee has previously subordinated its mortgage to the lease or assented to the lease in writing.” Bloom, Lease Drafting in Massachusetts §9.11.2, at 9-28-29 (MCLE Inc., rev. ed. 2001).

 The Buis are not collaterally estopped from raising this issue because they purchased the property after the case had been tried before Judge Quinlan. They were not in privity with Atlantic Realty Trust and had no knowledge of the existence of the Lease until after the decision issued. The issue as to the effect of the foreclosure on the Lease was never raised in the case before Judge Quinlan. The Buis did not have a “full and fair opportunity to litigate the issue” whether the Lease was valid as to them in that litigation.