COMMONWEALTH *vs.* ONE 1986 VOLKSWAGEN GTI
AUTOMOBILE.

Franklin. February 8, 1994. - March 21, 1994.

Present: WILKINS, ABRAMS, O'CONNOR, & GREANEY, JJ.

*Practice, Civil*, Forfeiture proceeding. *Motor Vehicle*, Forfeiture, Owner-
ship. *Words*, "Owner."

Discussion of the meaning of the term "owner" as it is used in G. L. c.
94C, § 47 (*c*) (3), a forfeiture statute, with reference to the Federal
Comprehensive Drug Abuse Prevention and Control Act of 1970 and
cases decided thereunder. [372-375]

In a proceeding under G. L. c. 94C, § 47, seeking forfeiture of an automo-
bile on the ground that it was used in distributing controlled sub-
stances, the judge correctly concluded that the son of the owner of rec-
ord was the "owner" of the vehicle for purposes of contesting its
forfeiture, where the son, not the record owner, exercised dominion and
control over the vehicle and had knowledge of its use in violation of
G. L. c. 94C, § 47. [375-376]

CIVIL ACTION commenced in the Superior Court Depart-
ment on February 10, 1992.

The case was heard by *John F. Murphy, Jr.*, J.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Roy H. Anderson* for the claimant.

*Michael G. Gibbons*, Assistant District Attorney, for the
Commonwealth.

ABRAMS, J. The record owner of a black 1986 Volkswagen
GTI automobile appeals from a judgment ordering the Volks-
wagen forfeited to the Commonwealth. A judge in the Supe-
rior Court concluded that the automobile should be forfeited
because the son of the record owner had "complete control of
the vehicle and [had] full knowledge of its use as required by
subparagraph (7) (C) (3) of G. L. c. 94C, § 47 (1992

ed.).'' At trial, the issue was limited to ownership of the vehicle.[1] We transferred the appeal to this court on our own motion. We affirm.

1. *Facts.* On November 18, 1991, the automobile was impounded by the Greenfield police department after officers observed what they perceived to be a sale of crack cocaine by its operator, Gordon Scott Stover. Found on the front floor of the vehicle were plastic bags containing 8.6 grams of crack cocaine.[2] The Commonwealth brought before the Superior Court an action in the nature of a proceeding in rem seeking the forfeiture of the Volkswagen on the ground that it was used in violation of G. L. c. 94C, § 47.[3]

The Superior Court judge found that Faythe Stover, Gordon's mother, acquired title to the Volkswagen on Octo-

---

[1]On appeal, the claimant argues that the Commonwealth failed to prove that "the vehicle was used in the business of dispensing, manufacturing, or distribution of drugs." At trial, the Commonwealth stated that it "was prepared to introduce evidence . . . [as] to the specifics of how the seizure took place." Counsel for the claimant stated that the only issue was "ownership of the car." We therefore limit our consideration to the issue of ownership of the automobile. "The theory of law on which by assent a case is tried cannot be disregarded when the case comes before an appellate court for review . . . ." *Santa Maria* v. *Trotto,* 297 Mass. 442, 447 (1937). See *Commonwealth* v. *Roberts,* 407 Mass. 731, 737 (1990); *Commonwealth* v. *Fernette,* 398 Mass. 658, 667 (1986); *Commonwealth* v. *Garcia,* 409 Mass. 675, 678 (1991); *Commonwealth* v. *Lewis,* 346 Mass. 373, 383 (1963), cert. denied, 376 U.S. 933 (1964) ("An issue not fairly raised before the trial judge will not be considered for the first time on appeal").

[2]A complaint was brought against Gordon Stover in the Greenfield District Court for violations of G. L. c. 94C, §§ 32 and 34 (1992 ed.). The Commonwealth dismissed the case after the defendant's motion to suppress all evidence against him was allowed. The fact that the criminal proceedings against Gordon Stover have been dismissed has no bearing on this forfeiture proceeding because "a vehicle may be forfeited even though the criminal prosecution results in acquittal, or is dismissed by the government, or, indeed, is never brought." *Commonwealth* v. *One 1976 Cadillac DeVille Auto.,* 380 Mass. 411, 421 (1980).

[3]General Laws c. 94C, § 47 (*a*) (3) (1992 ed.), provides: "All conveyances, including aircraft, vehicles or vessels used, or intended for use, to transport, conceal or otherwise facilitate the manufacture, dispensing, distribution of or possession with intent to manufacture, dispense or distribute, a controlled substance in violation of any provision of [§ 32,

ber 22, 1991, and that she had no knowledge of its use for distributing crack cocaine. However, the judge determined that, despite the fact that Faythe Stover was the record owner of the Volkswagen, Gordon Stover was its "owner in fact" and that he had the requisite knowledge of the use to which it was being put to subject the vehicle to forfeiture.[4]

Although title to the Volkswagen was in Faythe Stover's name, the judge determined that Gordon Stover exercised dominion and control over the vehicle, as evidenced by the fact that the automobile was parked regularly at an address in Greenfield, where Gordon Stover resided with his girl friend,[5] not in Springfield, where Faythe Stover resided. He also determined that Gordon Stover "rigged" the automobile "with an elaborate sound system" that was intended for his benefit, not for that of his mother.[6]

---

§ 32A, § 32B, § 32C, § 32D, § 32E, § 32F, § 32G, § 32I, § 32J, or § 40 shall be subject to forfeiture to the Commonwealth]."

General Laws c. 94C, § 47 (*c*) (3) (1992 ed.), provides, in part: "No conveyance or real property shall be subject to forfeiture unless the owner thereof knew or should have known that such conveyance or real property was used in and for the business of unlawfully manufacturing, dispensing, or distributing controlled substances."

[4]The Superior Court judge incorrectly placed the burden of proof on the Commonwealth. General Laws c. 94C, § 47 (*d*) (1992 ed.), provides: "[W]here the property is claimed by any person, other than the commonwealth, the commonwealth shall have the burden of proving to the court the existence of probable cause to institute the action, and any such *claimant* shall then have the burden of proving that the property is not forfeitable . . . ." (emphasis added).

[5]On this point, Officer Peter J. Skerritt of the Greenfield police department, who resides at 6 Harris Court in Greenfield, testified that he observed Gordon Stover coming to and going from 14 Harris Court at all hours of the day on an almost daily basis throughout most of 1991. Officer Skerritt further testified that the Volkswagen was parked overnight at 14 Harris Court every night between October 22, 1991, and November 17, 1991.

[6]Detective John Newton of the Greenfield police department said that the Volkswagen contained an AM/FM Realistic brand stereo and tape recorder which was bolted into the dashboard; a stereo amplifier which was bolted into the floor beneath the rear passenger seat on the driver's side and which was connected to the stereo and tape recorder; four speakers, two of which were very large and occupied virtually the entire hatchback compartment of the vehicle; and a cassette carrying box which contained

2. *The ownership issue.* The Superior Court judge's determination to order the Volkswagen forfeited to the Commonwealth was based on his conclusion that Gordon Stover was its "owner" as that term is used in G. L. c. 94C, § 47 (*c*) (3). General Laws c. 94C, § 47 (*c*) (3), does not specifically define the term "owner." "When a statute does not define its words we give them their usual and accepted meanings, as long as these meanings are consistent with the statutory purpose. . . . We derive the words' usual and accepted meanings from sources presumably known to the statute's enactors, such as their use in other legal contexts and dictionary definitions." (Citations omitted.) *Commonwealth v. Zone Book, Inc.,* 372 Mass. 366, 369 (1977).

The Commonwealth correctly notes that the meanings which we have assigned to the term "owner" in the context of other statutes[7] and the dictionary definition of the word "owner"[8] shed little light on how we should interpret that

cassettes of rap-style music. The claimant, who was fifty years old at the time of trial, said that she was unfamiliar with the sound system in the Volkswagen. She further stated that she rarely listens to music and that, when she does listen to it, she listens to gospel music.

[7] In *Animal Rescue League of Boston* v. *Assessors of Bourne,* 310 Mass. 330, 333 (1941), we observed that "[t]he term 'owner' . . . is one of flexible meaning depending upon the other language of the particular statute in which it is employed and the purpose and aim of the statute. It varies from an absolute proprietary interest to a mere possessory right. In some instances, it connotes a general property right, and in others a somewhat tenuous interest. . . . The mere definition of a word having such a broad significance is of little aid in determining what particular meaning the Legislature intended it should have in the enactment of [a particular] statute." (Citations omitted.)

[8] Black's Law Dictionary 1105 (6th ed. 1990), defines the term "[o]wner" as "[t]he person in whom is vested the ownership, dominion, or title of property; proprietor. He who has dominion of a thing, real or personal, corporeal or incorporeal, which he has a right to enjoy and do with as he pleases, even to spoil or destroy it, as far as the law permits, unless he be prevented by some agreement or covenant which restrains his right. The term is, however, a nomen generalissimum, and its meaning is to be gathered from the connection in which it is used, and from the subject-matter to which it is applied. The primary meaning of the word as applied to land is one who owns the fee and who has the right to dispose of the property, but the term also includes one having a possessory right to land

term as it appears in G. L. c. 94C, § 47 (c) (3). However, this does not mean that there are no guideposts available to assist us in determining to whom the innocent owner provision of G. L. c. 94C, § 47 (c) (3), may apply. General Laws c. 94C, § 47, is modeled in large part on the Federal Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 881 (1988).[9] See *Commonwealth v. One 1987 Mercury Cougar Auto.*, 413 Mass. 534, 538 n.2 (1992). General Laws c. 94C, § 47 (c) (3), substantially tracks the Federal forfeiture statute's "innocent owner" provision, 21 U.S.C. § 881 (a)(4)(C). See notes 3 and 9, *supra*. Because our statute tracks the Federal statute, we have looked to the Federal case law for guidance in interpreting our forfeiture statute. See *One 1987 Mercury Cougar Auto.*, *supra* at 538-541 & nn.2-5; *Commonwealth v. One 1976 Cadillac DeVille Auto.*, 380 Mass. 411, 419-422 & nn.9, 11-16 (1980); *Commonwealth v. One 1977 Pontiac Grand Prix Auto.*, 375 Mass. 669, 672-675 (1978). See also *Commonwealth v. One 1978 Ketch Named "Snow White,"* 23 Mass. App. Ct. 399, 401-402 & n.2 (1987). We therefore turn to Federal case law to determine whether the Superior Court judge correctly concluded that Gordon Stover's dominion and control over the vehicle was sufficient to order the vehicle forfeited.

The Federal courts have held that to be able to invoke the Federal forfeiture statute's "innocent owner" provision, a

---

or the person occupying or cultivating it. The term 'owner' is used to indicate a person in whom one or more interests are vested for his own benefit . . . to say without more that a person has title to certain property does not indicate whether he holds such property for his own benefit or as trustee."

[9]Title 21 U.S.C. § 881 (a)(4)(C) (1988) provides: "The following shall be subject to forfeiture to the United States . . . (4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of [controlled substances], except that — (C) no conveyance shall be forfeited under this paragraph to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge, consent, or willful blindness of the owner."

claimant must prove that he or she has "an [ownership] interest in the property sufficient to establish . . . standing . . . to contest the seizure and resulting forfeiture." *United States* v. *Premises Known as 526 Liscum Drive, Dayton, Montgomery County, Ohio,* 866 F.2d 213, 216 (6th Cir. 1989). See *United States* v. *$38,000 in U.S. Currency,* 816 F.2d 1538, 1544 (11th Cir. 1987); *United States* v. *One 18th Century Colombian Monstrance,* 802 F.2d 837, 838 (5th Cir. 1986), cert. denied sub nom. *Newton* v. *United States,* 481 U.S. 1014 (1987); *United States* v. *One 1954 Douglas C-54 Aircraft,* 647 F.2d 864, 866 (8th Cir. 1981), cert. denied sub nom. *Stumpff* v. *United States,* 454 U.S. 1143 (1982).

In determining whether such an ownership interest exists, the "[c]ourts generally look to indicia of dominion and control such as possession, title and financial stake." *United States* v. *One 1981 Datsun 280ZX,* 563 F. Supp. 470, 474 (E.D. Pa. 1983). See *United States* v. *One 1945 Douglas C-54 Aircraft,* 604 F.2d 27, 28-29 (8th Cir. 1979), on appeal after remand, 647 F.2d 864, 866 (8th Cir. 1981), cert. denied sub nom. *Stumpff* v. *United States,* 454 U.S. 1143 (1982); *United States* v. *Fifteen Thousand Five Hundred Dollars,* 558 F.2d 1359, 1361 (9th Cir. 1977); *General Fin. Corp. of Fla. South* v. *United States,* 333 F.2d 681, 682 (5th Cir. 1964); *United States* v. *One 1971 Porsche Coupe Auto.,* 364 F. Supp. 745, 748 (E.D. Pa. 1973).

Because "[t]he intent of the [Federal forfeiture statute] is to deprive criminals of the tools by which they conduct their illegal activities . . . [and because a] failure to look beyond bare legal title would foster manipulation of nominal ownership to frustrate this intent," the Federal courts have determined that "possession of bare legal title by one who does not exercise dominion or control over property may be insufficient to establish standing to challenge a forfeiture." *Premises Known as 526 Liscum Drive, Dayton, Montgomery County, Ohio, supra* at 217. See *United States* v. *A Single Family Residence,* 803 F.2d 625, 630 (11th Cir. 1986); *United States* v. *One 1978 Piper Navajo PA-31 Aircraft,* 748 F.2d 316, 319 (5th Cir. 1984); *One 1945 Douglas C-54 Air-*

*craft, supra* at 28; *One 1971 Porsche Coupe Auto., supra* at 746-748. The Federal courts have concluded that ownership of an item should be determined by "look[ing] to who would actually suffer from [its] loss." *One 1981 Datsun 280ZX, supra* at 475. See *One 1971 Porsche Coupe Auto., supra* at 748.

In *One 1971 Porsche Coupe Auto., supra*, the United States District Court for the Eastern District of Pennsylvania considered who would suffer from a vehicle's loss to determine who had a sufficient ownership interest in the automobile to contest its forfeiture. The court found that the claimant paid for the vehicle and held title to it. *Id.* at 746. However, the court further found that the automobile was purchased for the benefit of the claimant's son, who "had sole possession and exercised dominion and control over it." *Id.* at 748. Based on these facts, the court determined that it was the son, not the claimant, "who [would] suffer the loss occasioned by forfeiture" and, therefore, that "the [claimant] lack[ed] the requisite real interest in the car [to contest its forfeiture]." *Id.*

The facts of the instant case are substantially similar to those of *One 1971 Porsche Coupe Auto.*[10] While the Superior Court judge made no determination as to whether Gordon Stover's possession of the Volkswagen was exclusive, the judge's well-supported findings establish that Gordon Stover exercised dominion and control over the automobile and that he would suffer the loss occasioned by the vehicle's forfeiture. See notes 5 and 6, *supra.* It is true that, as the Volkswagen's record owner, Faythe Stover would, as a result of forfeiture, suffer its loss as an asset. However, as the Federal court implicitly concluded in *One 1971 Porsche Coupe Auto.*, a person with a financial stake in an automobile does

---

[10]The court in *One 1971 Porsche Coupe Auto.*, 364 F. Supp. 745 (E.D. Pa. 1973), made no finding as to whether the claimant in that case paid for the insurance on the automobile. It is possible, therefore, that the claimant in the *One 1971 Porsche Coupe Auto.* case did not pay for the vehicle's insurance while the claimant in this matter did purchase insurance. We view that distinction as being insignificant.

not possess a sufficient ownership interest to contest its forfeiture unless the person also exercises dominion and control over the vehicle.

*Judgment affirmed.*