908 P.2d 33

**In the Matter of ONE RESIDENCE LOCATED AT 4030 W. AVOCADO, CORTARO RIDGE, LOT 32, in Docket 8592, Page 1222.**

**No. 2 CA–CV 95–0053.**

Court of Appeals of Arizona,
Division 2, Department B.

Oct. 19, 1995.

Reconsideration Denied Nov. 16, 1995.

Stephen D. Neely, Pima County Attorney by Christopher J. Roads, Tucson, for Appellant.

Fernando Fajardo, Tucson, for Appellee.

**OPINION**

HATHAWAY, Judge.

The state appeals from the trial court's judgment in a drug forfeiture action that the claimant, Ricardo Javier Borboa (claimant), was an innocent owner of a residence located at 4030 W. Avocado, Tucson, Arizona, and thus declined to forfeit the property. We reverse.

We view the facts in the light most favorable to sustaining the verdict reached by the trial court. *Gulf Homes, Inc. v. Gonzales,* 139 Ariz. 1, 676 P.2d 635 (App.1983) (vacated in part on other grounds). We will not substitute our judgment for that of the trial court if there is a reasonable basis in the record to sustain the trial court's exercise of its discretion. *Grand Real Estate, Inc. v. Sirignano,* 139 Ariz. 8, 676 P.2d 642 (App. 1983).

On September 25, 1992, sheriff's deputies executed a search warrant at the residence in question. The house was purchased by the claimant's father in May 1989, but title to the property was placed in the name of the claimant. During the search, the deputies found approximately 500 pounds of marijuana in the house. They also found packaging materials, scales and drug ledgers. Documents found contained the names of Elizabeth Borboa, Maria Gonzales and Carlos Borboa. Elizabeth Borboa was present in the house when the search was conducted. Carlos Borboa and Maria Gonzales were arrested in a car being used as an escort vehicle for another vehicle delivering 100 pounds of marijuana destined for a "controlled buy." Carlos Borboa is the older

brother of the claimant, Elizabeth Borboa is the older sister, and Maria Gonzales is the claimant's mother.

▮ The sole issue raised by the state is that the trial court erred as a matter of law in holding that the claimant had met his burden of proof to qualify for the exemption from forfeiture under A.R.S. § 13–4304(4), because the claimant is only a "straw owner" of the property.

In an *in rem* forfeiture case, the state has the initial burden of proof to establish probable cause for the forfeiture of the property. A.R.S. § 13–4311(M). The trial court held that the state had established probable cause for the forfeiture of the residence at 4030 W. Avocado. This finding has not been challenged by the claimant.

Once the state has established probable cause for the forfeiture, the burden shifts to the claimant to establish that his or her interest in the property is exempt from forfeiture. A.R.S. § 13–4311(M). The exemptions from forfeiture are set forth in A.R.S. § 13–4304. The only one the claimant in this case attempted to establish is the "innocent owner" exemption contained in § 13–4304(4), which states:

No owner's or interest holder's interest may be forfeited under this chapter if the owner or interest holder establishes all of the following:

(a) He acquired the interest before or during the conduct giving rise to forfeiture.

(b) He did not empower any person whose act or omission gives rise to forfeiture with legal or equitable power to convey the interest, as to a *bona fide* purchaser for value, and he was not married to any such person or if married to such person, held the property as separate property.

(c) He did not know and could not reasonably have known of the act or omission or that it was likely to occur.

The claimant asserted that he was the owner of the property and that he had no knowledge of the marijuana found in the house. The only evidence he presented to support his claim of ownership was that title to the property was in his name and that he had signed a rental agreement for the house prior to the search.

Under the forfeiture statutes, an "owner" is defined as "a person who is not a secured party within the meaning of § 47–9105 and who has an interest in property, whether legal or equitable." A.R.S. § 13–4301(4). As the court noted in *In re One 1983 Toyota Silver Four–Door Sedan,* 168 Ariz. 399, 401, 814 P.2d 356, 358 (App.1991), in order for a person to claim the exemption contained in A.R.S. § 13–4304(4), they must first establish that they own the property or hold a legal interest in the property. *Id.*

In the *1983 Toyota* case, the state challenged the claimant's ownership of the vehicle. Under the facts of that case, the court held that the claimant had established ownership. The court noted that title to property created a *prima facie* presumption of ownership, but recognized that the presumption was rebuttable, *citing Wallace Imports, Inc. v. Howe,* 138 Ariz. 217, 224, 673 P.2d 961, 968 (App.1983). Although *1983 Toyota* involved a motor vehicle, we believe its reasoning is applicable to the issue of ownership of real property as well. Both real estate and motor vehicles are transferred by written documents filed in public records.

Several federal and state courts have addressed the issue of "ownership" in the context of forfeiture cases based on drug and racketeering activities. These courts have uniformly held that courts must look beyond mere possession of title in order to establish the "true ownership" of the property. As one court noted:

"The rationale for the rule that bare legal title may be insufficient [for standing] is based on a candid determination that things are often not what they appear to be, especially in the world of drug trafficking.... In brief, people engaged in illegal activities often attempt to disguise their interests in property by placing title in someone else's name."

*United States v. A Single Family Residence and Real Property Located at 900 Rio Vista Blvd., Ft. Lauderdale,* 803 F.2d 625, 630 (11th Cir.1986), *quoting United States v. One 1977 36 foot Cigarette Ocean Racer,* 624 F.Supp. 290, 294 (S.D.Fla.1985). "A failure to look beyond bare legal title would foster manipulation of nominal ownership to frustrate [the intent of the forfeiture statutes]."

*United States v. Premises Known as 526 Liscum Drive, Dayton, Montgomery County, Ohio,* 866 F.2d 213, 217 (6th Cir.1989).

In *Single Family Residence, 900 Rio Vista Blvd.,* the court held that possession of bare legal title was not sufficient, the claimant must also establish that it exercised "dominion and control" over the property. 803 F.2d at 630. "Ownership" in the forfeiture context has also been stated as "possession, control, title and financial stake" in the property. *United States v. One 1945 Douglas C–54 (DC–4) Aircraft,* 647 F.2d 864, 866 (8th Cir.1981), *cert. denied,* 454 U.S. 1143 (1982); *United States v. One 1981 Datsun 280ZX,* 563 F.Supp. 470, 474 (E.D.Pa.1983). Ownership has also been held to include a "proprietary interest" in the property. *State ex. rel. Love v. One 1967 Chevrolet El Camino,* 247 Kan. 469, 799 P.2d 1043 (1990). The Supreme Court of Massachusetts has held that the standard is to look at who would actually suffer from the loss of the property. *Com. v. One 1986 Volkswagen GTI Auto.,* 417 Mass. 369, 374, 630 N.E.2d 270, 274 (1994).

In *United States v. Vacant Land Located at 10th Street and Challenger Way in Palmdale, Ca.,* 15 F.3d 128 (9th Cir.1994), the court was faced with a claim by the drug offender's father-in-law who had signed a promissory note secured by a deed of trust on the property, but did not make any note payments or tax payments. He testified that he took title to the property because he intended to use the property to take care of his daughter and grandchildren. The court rejected this argument since the father-in-law had no real interest in the property and held that since the father-in-law did not pay the mortgage payments or the taxes and did not exercise any dominion and control over the property, he was merely a straw owner and not an "owner" under the forfeiture statutes.

Similarly, in *United States v. One Parcel of Land, Known as Lot 111–B, Tax Map, Key 4–4–03–71(4), Waipouli, Kapaa, Island and County of Kauai, State of Hawaii,* 902 F.2d 1443 (9th Cir.1990), the Ninth Circuit rejected a claim of ownership, finding a mere straw ownership when the owner could not establish any financial stake in the property. Title to the property had been held by several undivided interests. The title showed the claimant had an undivided interest in 41.65% of the property. The claimant testified that he had paid part of the purchase price, but did not know how much he had contributed; had paid the property taxes, but did not have any documents to back up his claim of payment; and claimed to have made other payments on the property, but had no records or documents to back up these claims. The court held that the claimant had failed to meet his burden of proof that he was more than a straw owner in the property.

We reach a similar conclusion in this case. Other than the detectives who conducted the search, the claimant was the only person who testified at the forfeiture hearing. He testified that his father selected the house and paid the purchase price down payment. The claimant did not pay any of the down payment. At the time of purchase, the claimant, who was 18 years old, apparently signed a promissory note in the amount of $70,000 secured by a deed of trust on the property. The claimant was unaware of the purchase price of the house and did not remember signing the promissory note.

The claimant has never been employed and, at the time of the hearing, he was a student. He was aware that monthly mortgage payments had to be made, but he did not know the amount of the monthly payment, nor did he know whether his mother or his father made the payments. He never made any contribution to the mortgage payments, nor did he pay any taxes on the property. He did not know if any taxes had ever been paid on the property nor did he take any steps to see to it that the taxes were paid. The claimant also did not know whether any insurance had ever been purchased for the property. He stated he did not maintain the property nor did he pay for any maintenance or repairs to the property. The claimant further testified that the reason his father purchased the house was to provide a place for him and his half-brothers to live while attending school. However, the claimant has never lived in the house and neither he nor his half-brothers ever came to the United States to attend school.

As to the one-year rental agreement for the house, it was signed by the claimant and Ruben Vega in November 1991. Both signatures were notarized by one notary public on

the same day. However, the claimant testified that he never met Ruben Vega and that the rental was arranged through a friend of his mother. The claimant had nothing to do with the property during the rental period nor did he have any idea why his mother, brother and sister would be at the house during the rental period. The rental agreement was held by his mother and he did not receive any of the rental payments for his house. He testified he "really never knew about that money," and he did not know if any other rental agreements had been executed for the property.

The claimant cites two cases in support of his assertion that he should be considered the true owner. Both cases, however, suggest that he is no more than a straw owner. In *United States v. Real Property & Improvements Located at 5000 Palmetto Drive, Ft. Pierce, St. Lucie County, Florida*, 928 F.2d 373 (11th Cir.1991), the claimant there had established more than mere legal title to the property. Although the property had been used by the claimant's son to facilitate drug trafficking, the claimant established that she had purchased the property with a $50,000 cash down payment, visited the house regularly to clean it, allowed her son to live there rent free, and expressly prohibited him from using the property in any illegal manner. Thus, she actually exercised dominion and control over the property. The claimant in the case at bar did not testify as to any activity of control over this property other than signing a lease.

In *United States v. $38,570 U.S. Currency*, 950 F.2d 1108 (5th Cir.1992), the court held that merely asserting "I own the money" was insufficient to give a person standing to challenge a forfeiture. The court found, however, that the claimant did have standing because the government's complaint asserted that the claimant had exercised dominion and control over the money. There has been no allegation or evidence in this case that the claimant has ever exercised dominion and control over the property.

The claimant nevertheless asserts that he has established ownership because he is obligated to pay the mortgage payments, having signed the promissory note. However, the claimant testified that he did not even remember signing the promissory note. The

fact is, during the five-year period from the date of the purchase to the hearing, the claimant did not make any mortgage payments or any other payments related to this property.

The evidence presented at the hearing established clearly that at no time did the claimant ever exercise dominion and control over the property. Not only did he not make any mortgage payments nor even have the capability of making them, he did not arrange for the payments to be made by someone else; he did not select the property to be purchased; he did not live on the property; he did not insure the property; he did not pay any taxes on the property, and he did not make any repairs on the property. Any of these factors could have established that he exercised dominion and control over the property under the court's analysis in *1983 Toyota*.

The claimant also argues that the state made no attempt to prove that at the time the house was purchased, anything illegal was traceable to the claimant or his father. He argues that there is no evidence to prove that the claimant's father was involved in drugs or that drug proceeds were used to purchase the house. As the state points out, however, it does not assert and has never contended that the house is forfeit because it is the proceeds of a drug or racketeering offense. Rather, the state asserts that the house is subject to forfeiture because it was used in drug transactions committed for financial gain.

■ The claimant finally contends that the state has not presented any evidence to show that the wrongdoers in this case, his mother, brother and sister, had any interest in the property. It is not the burden of the state to establish who the wrongdoers are, nor that any wrongdoer has an interest in the property. The state has the burden of proving that the property was used to facilitate the commission of either a racketeering or drug violation. A.R.S. §§ 13–2314(G)(3) and 13–3413(A)(1). The trial court held that the state met this burden and the claimant has not appealed this ruling.

The evidence presented at the hearing was more than sufficient to overcome the presumption of ownership created by bare pos-

session of legal title. Someone other than the claimant is the true owner of the property and the claimant is nothing more than a straw owner of the premises. Consequently, he cannot establish the exemption from forfeiture contained in A.R.S. § 13–4304(4).

We find that the trial court erred in finding that the claimant is the true owner of the property, reverse the judgment of the trial court and remand for entry of judgment in favor of the state.

Reversed and remanded.

DRUKE, C.J., and ESPINOSA, P.J., concur.