2002 WY 160

**Robin BEAUGUREAU, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 01–94.

Supreme Court of Wyoming.

Oct. 22, 2002.

Rehearing Denied Nov. 19, 2002.

Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Tina N. Kerin, Assistant Appellant Counsel, Representing Appellant. Argument presented by Ms. Kerin.

Hoke MacMillan, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Georgia L. Tibbetts, Senior Assistant Attorney General; Theodore E. Lauer, Prosecution Assistance Program; and Crystal S. Swanson and Howard Scotland, Student Interns, Representing Appellee. Argument presented by Mr. Scotland.

Before HILL, C.J., and GOLDEN, LEHMAN *, KITE, and VOIGT, JJ.

HILL, Chief Justice.

[¶ 1] Appellant, Robin Beaugureau, seeks review of the judgment and sentence of the district court finding her guilty of two counts of child abuse.[1] She contends that there is

---

* Chief Justice at time of oral argument.

1. **§ 6–2–503. Child abuse; penalty.**

(a) Except under circumstances constituting a violation of W.S. 6-2-502, a person who is not responsible for a child's welfare as defined by W.S. 14-3-202(a)(i), is guilty of child abuse, a felony punishable by imprisonment for not more than five (5) years, if:

(i) The actor is an adult or is at least six (6) years older than the victim; and

(ii) The actor intentionally or recklessly inflicts upon a child under the age of sixteen (16) years:

(A) Physical injury as defined in W.S. 14-3-202(a)(ii)(B); or

(B) Mental injury as defined in W.S. 14-3-202(a)(ii)(A).

(b) Except under circumstances constituting a violation of W.S. 6-2-502, a person is guilty of child abuse, a felony punishable by imprisonment for not more than five (5) years, if a person responsible for a child's welfare as defined in W.S. 14-3-202(a)(i) intentionally or recklessly inflicts upon a child under the age of eighteen (18) years:

(i) Physical injury as defined in W.S. 14-3-202(a)(ii)(B), excluding reasonable corporal punishment; or

(ii) Mental injury as defined in W.S. 14-3-202(a)(ii)(A).

Wyo. Stat. Ann. § 6-2-503 (LexisNexis 2001).

**§ 14–3–202. Definitions.**

(a) As used in W.S. 14-3-201 through 14-3-215:

(i) "A person responsible for a child's welfare" includes the child's parent, noncustodial parent, guardian, custodian, stepparent, foster parent or other person, institution or agency having the physical custody or control of the child;

insufficient evidence to sustain her convictions on two counts of felony child abuse.[2] She also contends that she was denied due process of law and a fair trial because the State prevented her from interviewing one of the victims before trial, that the trial court erred in refusing to inquire into the competency of one of the victims who was called as a witness, that the prosecutor engaged in misconduct during his cross-examination of Beaugureau, and that the trial court erred in not conducting an inquiry into whether or not she needed substitute counsel.

[¶ 2] Although we find serious errors in the proceedings, the errors were not prejudicial and are harmless. Thus, we will affirm.

> (ii) "Abuse" with respect to a disabled adult means as defined under W.S. 35–20–102(a)(ii). **"Abuse" with respect to a child means inflicting or causing physical or mental injury, harm or imminent danger to the physical or mental health or welfare of a child other than by accidental means, including abandonment, excessive or unreasonable corporal punishment, malnutrition or substantial risk thereof by reason of intentional or unintentional neglect, and the commission or allowing the commission of a sexual offense against a child as defined by law:**
> (A) **"Mental injury" means an injury to the psychological capacity or emotional stability of a child as evidenced by an observable or substantial impairment in his ability to function within a normal range of performance and behavior with due regard to his culture;**
> (B) **"Physical injury" means death or any harm to a child including but not limited to disfigurement, impairment of any bodily organ, skin bruising, bleeding, burns, fracture of any bone, subdural hematoma or substantial malnutrition;** [This subsection was amended in 2002 and has been substantially changed; see footnote 2.]
> (C) "Substantial risk" means a strong possibility as contrasted with a remote or insignificant possibility;
> (D) "Imminent danger" includes threatened harm and means a statement, overt act, condition or status which represents an immediate and substantial risk of sexual abuse or physical or mental injury.
> (iii) "Child" means any person under the age of eighteen (18);
> (iv) "Child protective agency" means the field or regional offices of the department of family services;
> (v) "Court proceedings" means child protective proceedings which have as their purpose the protection of a child through an adjudication of whether the child is abused or neglected, and the making of an appropriate order of disposition; •
> (vi) "Institutional child abuse and neglect" means situations of child abuse or neglect where a foster home or other public or private residential home, institution or agency is responsible for the child's welfare;
> (vii) "Neglect" with respect to a disabled adult means as defined under W.S. 35–20–102(a)(xi). "Neglect" with respect to a child means a failure or refusal by those responsible for the child's welfare to provide adequate care, maintenance, supervision, education or medical, surgical or any other care necessary for the child's well being. Treatment given in good faith by spiritual means alone, through prayer, by a duly accredited practitioner in accordance with the tenets and practices of a recognized church or religious denomination is not child neglect for that reason alone;
> (viii) "State agency" means the state department of family services;
> (ix) "Subject of the report" means any child reported under W.S. 14–3–201 through 14–3–215 or the child's parent, guardian or other person responsible for the child's welfare, or any disabled adult reported under W.S. 35–20–101 through 35–20–109 or the disabled adult's caretaker;
> (x) "Unfounded report" means any report made pursuant to W.S. 14–3–201 through 14–3–215 or 35–20–101 through 35–20–109 that is not supported by credible evidence;
> (xi) "Substantiated report" means any report of child abuse or neglect pursuant to W.S. 14–3–201 through 14–3–215, or any report of abuse, neglect, exploitation or abandonment of a disabled adult under W.S. 35–20–101 through 35–20–109, that is determined upon investigation that credible evidence of the alleged abuse, neglect, exploitation or abandonment exists;
> (xii) "Abandonment" with respect to a disabled adult means as defined under W.S. 35–20–102(a)(i);
> (xiii) "Disabled adult" means any person defined under W.S. 35–20–102(a)(vi);
> (xiv) "Exploitation" with respect to a disabled adult means as defined under W.S. 35–20–102(a)(ix).

Wyo. Stat. Ann. § 14–3–202 (LexisNexis 2001) (emphasis added).

2. The definition of "physical injury" was amended by the legislature during its 2002 session so that it now provides:

> (B) "Physical injury" means any harm to a child including but not limited to disfigurement, impairment of any bodily organ, skin bruising if greater in magnitude than minor bruising associated with reasonable corporal punishment, bleeding, burns, fracture of any bone, subdural hematoma or substantial malnutrition;

Wyo. Stat. Ann. § 14–3–202(a)(B) (LexisNexis 2002 Supp.).

## ISSUES

[¶ 3] Beaugureau provides this statement of the issues:

I. Was there insufficient evidence to convict Appellant of child abuse of the alleged victim, [BC]?

II. Was there insufficient evidence to convict Appellant of child abuse of the alleged victim, [SD] and did the trial court abuse its discretion in allowing the late amendment of the information with regard to the allegation of child abuse of SD?

III. Was Appellant denied due process of law when an agent of the State, a DFS[3] employee, refused to allow Appellant's trial counsel to interview the alleged victim, [BC], particularly in view of the fact that the prosecutor was allowed to speak with [BC] prior to trial?

IV. Did the trial court err in refusing to examine [BC's] competency prior to the substance of his testimony?

V. Should this Court reverse its position articulated in *Dike v. State,* 990 P.2d 1012 (Wyo.1999), wherein the Court reaffirmed that "when the jury is presented with contradictory testimony, counsel is allowed to communicate the reasonable inference that one of the witnesses is lying"? [sic] Additionally, did the prosecutor commit prosecutorial misconduct by using contradictions in the testimony to improperly question Appellant?

VI. Did the trial court err in not holding a hearing or inquiry to determine if appellant needed substitute counsel?

The State rephrases the issues in these words:

I. Was there sufficient evidence to convict Appellant of child abuse as to BC?

II. Was there sufficient evidence to convict Appellant of child abuse as to SD, and did the district court abuse its discretion in allowing the State to amend the information with regard to the dates when the child abuse was committed?

3. Department of Family Services.

4. Francis was also charged with felony child abuse with respect to BC and was found guilty in a separate proceeding.

III. Was Appellant denied due process of law when the Department of Family Services refused to allow Appellant's counsel to interview victim BC prior to trial?

IV. Did the district court err in refusing to conduct a further competency hearing regarding BC?

V. Did the district court apply the correct rule of law to the facts in the case, should this Court overrule *Dike v. State,* and did the prosecutor commit misconduct by using contradictions in the testimony during questioning of Appellant?

VI. Did the district court err in not holding a hearing or inquiry to determine if Appellant needed substitute counsel?

## FACTS

[¶ 4] The instant appeal is limited to facts that describe two fairly discrete incidents, though the testimony at trial spanned more than a decade and a half worth of instances of ongoing abusive conduct by Beaugureau and her husband, Francis.[4] Their victims were principally SD and BC.[5] The first incident relates to Beaugureau's daughter SD (SD was a step-daughter to Francis). Sometime between December 1, 1997 and March 31, 1998, it was alleged that Beaugureau severely beat SD, inflicting physical injury constituting felony child abuse.

[¶ 5] The second incident involved BC. It was alleged that between July 1, 1995 and October 3, 1996, Beaugureau inflicted physical injury on BC constituting felony child abuse. The central incident, although the record bears out more incidents than we care to attempt to count, took place when Beaugureau forced BC to stick his hand into a burning acetylene torch. BC suffered a severe burn during that incident and a skin graft became necessary in order to successfully treat the injury.

[¶ 6] We note at this juncture that the record chronicles incidents of child abuse that span most of the lifetimes of SD and GD

5. There is considerable evidence that both Beaugureau and her husband Francis also abused GD, a brother to SD, though no charges were brought against either of them in that regard.

(who were 15 and 19 years of age, respectively, at the time of trial) and 15 months in the life of BC. No issue is raised in regard to the volume of evidence that was admitted at trial. It was a part of Beaugureau's trial strategy to attempt to show that Francis was a controlling and manipulative religious zealot who forced Beaugureau to abuse children, and, thus, it was Beaugureau's intention that this great volume of evidence be admitted.

## DISUSSION

### Sufficiency of the Evidence

■ [¶ 7] The benchmark for review of sufficiency of the evidence claims is whether the evidence, when viewed in the light most favorable to the State, is such as to permit a reasonable trier of fact to find guilt beyond a reasonable doubt. *Statezny v. State*, 2001 WY 22 ¶ 15, 18 P.3d 641, ¶ 15 (Wyo.2001); *Hadden v. State*, 2002 WY 41, ¶ 27, 42 P.3d 495, ¶ 27 (Wyo.2002).

■ [¶ 8] Applying this standard to the two convictions challenged in this appeal, we need only point out that SD testified that Beaugureau beat her so that she had a bloodied and broken nose, and that BC testified that Beaugureau forced him to thrust his hand into the flame of an acetylene torch. In each instance, the testimony of the victim is sufficient to sustain the respective conviction. It is surplusage, but we note, as well, that there was considerable corroborating evidence in each instance.

### Late Amendment of Information

■ [¶ 9] The trial court permitted the amendment of the information with respect to the count involving SD. The original information set forth a time frame ranging from December 1, 1997 until December 31, 1997. SD's testimony put the salient date as be-

tween January and March of 1998. Other corroborating testimony also placed the date of that occurrence in early 1998. The motion to amend was filed on November 29, 1999, and the district court granted the motion on that date. The trial began on November 29, 1999. The State contended that Beaugureau was given ample notice because the motion was delivered to the office of her attorney "four or five days" before the commencement of trial.[6] The State neglected to also relate that the date of manual service was on Thanksgiving Day, when the defense attorney was not in his office. Although the conduct of the State is in many ways inexcusable and demonstrates a disregard for the time-honored processes of the criminal justice system, we will not let the "criminal go free, merely because the prosecutor blundered." *See Meek v. State*, 2002 WY 1, ¶¶ 15–19, 37 P.3d 1279, ¶¶ 15–19 (Wyo.2002).

■ [¶ 10] As was the case in *Meek*, there is no demonstrable prejudice to Beaugureau here. Beaugureau was not charged with an additional or different crime. Beaugureau did not deny the incident at issue, she only contended that she did not beat SD, but rather only gently slapped her in order to bring her out of the fit of hysteria she was suffering. No substantial right belonging to Beaugureau was prejudiced, but the system bears a black mark due to the manner in which this issue was handled.

### Denial of Due Process

■ [¶ 11] Beaugureau contends that her rights to due process of law were denied because the prosecutor interfered with her attorney's efforts to interview BC before trial. The issue was not raised before the trial court, and the parties have agreed that we must review this asserted error under the plain error standard. The arguments by

---

6. W.R.Cr.P. 3(e) provides:
 (e) Amendment of Information or Citation. Without leave of the court, the attorney for the state may amend an information or citation until five days before a preliminary examination in a case required to be tried in district court or until five days before trial for a case not required to be tried in district court. The court may permit an information or citation to be amended:

(1) With the defendant's consent, at any time before sentencing.
(2) Whether or not the defendant consents:
 (A) At any time before trial if substantial rights of the defendant are not prejudiced.
 (B) **At any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced.**
(Emphasis added.)

both Beaugureau and the State are wide of the mark. The issue is not whether BC had a right to refuse to talk with Beaugureau's attorney, but whether, as Beaugureau claimed, the State actively interfered with defense counsel's **right** (as well as duty) to at least try to talk with BC. *See* Gregory G. Sarno, Annotation, *Interference by Prosecution with Defense Counsel's Pretrial Interrogation of Witnesses*, 90 A.L.R.3d 1231 (1979 and 2001 Supp.). The record does not bear out Beaugureau's assertion that the prosecution interfered with defense counsel's efforts to interview BC, nor does it demonstrate that the matter was ever called to the attention of the district court. We decline to further consider this issue because it was not raised below in any meaningful manner. We generally will not consider issues that are raised for the first time on appeal unless they are jurisdictional issues or issues of such a fundamental nature that they must be considered. *Bell v. State*, 994 P.2d 947, 957 (Wyo.2000); *also see Bailey v. State*, 12 P.3d 173, 177–79 (Wyo.2000).

### Hearing on BC's Competence to be a Witness

[¶ 12] Although the context was somewhat different (sexual abuse of a five-year-old child), in *English v. State*, 982 P.2d 139, 145 (Wyo.1999) we held:

The Wyoming Rules of Evidence provide that "[e]very person is competent to be a witness except as otherwise provided in these rules." W.R.E. 601. "A person is generally competent to testify if he can understand, receive, remember and narrate impressions and is sensible to the obligations of the oath taken before testifying." *Simmers [v. State]*, 943 P.2d [1189] at 1199 [(Wyo.1997)]; *Larsen v. State*, 686 P.2d 583, 585 (Wyo.1984). "Intelligence, not age, is the guiding criteria in determining the competency of a witness." *Baum v. State*, 745 P.2d 877, 879 (Wyo.1987). It is a well-established principle of law that competency of witnesses to testify is a question within the sound discretion of the trial court. *Selby v. Savard*, 134 Ariz. 222, 655 P.2d 342, 347 (1982); *People v. Estorga*, 200 Colo. 78, 612 P.2d 520, 524 (1980); *State v. Joblin*, 107 Idaho 351, 689 P.2d

767, 771 (1984); *State v. Howard*, 247 Mont. 370, 806 P.2d 1038, 1039 (1991). However, when children are called into the courtroom to testify, we have held that once the child's competency is called into question by either party, **it is the duty of the court to make an independent examination of the child to determine competency,** and that determination will not be disturbed unless shown to be clearly erroneous. *Burt v. Burt*, 48 Wyo. 19, 41 P.2d 524, 525 (1935) *(quoting* 5 Jones Commentaries on Evidence 3958, 3959, § 2107 (2d Ed.)). *See also Punches v. State*, 944 P.2d 1131, 1136 (Wyo.1997); *Trujillo v. State*, 880 P.2d 575, 579 (Wyo.1994); *Baum*, 745 P.2d at 879; and *Larsen*, 686 P.2d at 585.

**We have directed the district courts to utilize a five-part test for determining the competency of child witnesses:**

"(1) an understanding of the obligation to speak the truth on the witness stand; (2) the mental capacity at the time of the occurrence concerning which he is to testify, to receive an accurate impression of it; (3) a memory sufficient to retain an independent recollection of the occurrence; (4) the capacity to express in words his memory of the occurrence; and (5) the capacity to understand simple questions about it."

*Larsen*, 686 P.2d at 585 (quoting *State v. Allen*, 70 Wash.2d 690, 424 P.2d 1021 (1967)).

(Emphasis added.) *Also see Alicea v. State*, 13 P.3d 693, 696–98 (Wyo.2000).

[¶ 13] In the instant case there is no allegation that BC's testimony was in some way tainted. However, there was an obvious basis for a request for a competency hearing in the record, as BC was then residing at the Wyoming State Hospital and, prior to his appearance on the witness stand, the record was replete with references to his numerous institutionalizations for mental disorders and emotional problems. At the time BC was called to testify, defense counsel requested that the trial court conduct a brief competency hearing. At that point, it was the duty of the court to make an independent examination of BC to determine competency.

However, the trial court declined to perform that duty, viewing the request as a disruption to the proceedings and insisting that an examination should have been done prior to trial. Without question, the trial court erred in failing to make some limited inquiry as to BC's competency. However, our rules of appellate procedure admonish us to disregard "[a]ny error, defect, irregularity or variance which does not affect substantial rights." W.R.A.P. 9.04. In this instance, both counsel for the State and counsel for the defense asked the crucial questions that serve to assist an appellate court in deciding and/or reviewing whether a witness appears to be "competent." We are comfortable in concluding that the record clearly reflects that BC was competent to testify and that his testimony was corroborated by several witnesses, including that of his Mother and Beaugureau herself. To the extent there is any residual doubt that BC was competent to appear as a witness in this matter, that doubt quickly fades in light of the fact that virtually all of his testimony was the same as that of other witnesses to those same events. Therefore, we will disregard the trial court's error as harmless.

## Prosecutorial Misconduct

[¶ 14] Beaugureau asks us to overrule our decision in *Dike v. State*, 990 P.2d 1012, 1026 (Wyo.1999) to the effect that "[w]hen the jury is presented with contradictory testimony, counsel is allowed to communicate the reasonable inference that one of the witnesses is lying." That holding was based on our decision in *Barela v. State*, 787 P.2d 82, 83–84 (Wyo.1990) wherein we opined:

In an often quoted opinion, the United States Supreme Court stated that a prosecutor should prosecute with earnestness and vigor but "while he may strike hard blows, he is not at liberty to strike foul ones." *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935). Determining the location of the line between fair and foul requires reference to the underlying reasons for limiting argument of counsel.

The purpose of limiting the argument of counsel is, fundamentally, to preserve the prerogatives of the jury. Cases involving the propriety of argument are analyzed in terms of protecting the jury from deciding the facts on a basis other than the evidence produced at trial. This analysis is seen in cases where the prosecutor alludes to information that he claims to possess but which has not been presented as evidence. *See, e.g., Berger,* 295 U.S. at 86–89, 55 S.Ct. at 633. The perceived risk is that the jury will consider the statements made by the prosecutor as evidence, subverting the controls that the law places on admission of evidence. When a prosecutor misstates the law concerning the burden of proof, the risk is that the jury will determine the facts with reference to the incorrect law. *Stephens v. State,* 774 P.2d 60 (Wyo.1989). A similar example is when a prosecutor asserts that his credibility is superior to that of a witness and that the jury is to choose between the prosecutor's credibility and that of a witness. *Browder v. State,* 639 P.2d 889 (Wyo.1982).

When the prosecutor asserts his credibility or personal belief, an additional factor is injected into the case. This additional factor is that counsel may be perceived by the jury as an authority whose opinion carries greater weight than their own opinion: that members of the jury might be persuaded not by the evidence, but rather by a perception that counsel's opinions are correct because of his position as prosecutor, an important state official entrusted with enforcing the criminal laws of a sovereign state. While the prosecutor is expected to be an advocate, he may not exploit his position to induce a jury to disregard the evidence or misapply the law. *See Hopkinson v. State,* 632 P.2d 79, 166 (Wyo. 1981).

The trial court is in the best position to consider the propriety of argument that falls into the gray area between the permissible and the prohibited. *United States v. Young,* 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1984). In the context of a particular trial, a statement may be objectionable even if the identical statement would be permitted in a different

trial. These questions are best left to the discretion of the trial court. *Jeschke v. State*, 642 P.2d 1298 (Wyo.1982). For the purpose of review under the plain error standard, the limit on argument by the prosecutor is exceeded if the prosecutor's argument states or implies that the jury should consider factors other than the evidence presented in determining the facts.

Appellant bases part of his claim of plain error on the following statements made by the prosecutor:

> "When all else fails, when there is no other defense, you use consent; but there was none in this case."
>
> "Again, and again, and again we're going to be asking the question, who was telling the truth? People can lie in Court and people do lie in Court * * *."
>
> "Who do you believe in this particular situation? Do you believe the Plaintiff or the victim in this particular matter?"
>
> "You saw Mr. Taylor and Mr. Gonzales, and you know what they testified to, and you know who's telling the truth. If you lie long enough, and you lie, and you keep up with this story, and I contend that this is a story that Mr. Barela made up, you will lie * * *."
>
> "He lied throughout this, the court proceeding, and he has a real motive to lie * * *."

Appellant contends that these statements constitute an attack on his credibility and were statements of the prosecutor's personal belief as to the truth or falsity of the evidence presented. He argues that these statements were so egregiously prejudicial that they deprived him of a fair trial.

When these statements are read in the context of the complete argument, it is apparent that the prosecutor was not attempting to induce the jury to base their factual determination on his beliefs or opinions. Rather, he was articulating the State's position upon inferences to be drawn from the evidence. It was argument pure and simple. The prosecutor was careful to make it clear that the decision was in the hands of the jury. As to the statement that defendant was lying, when there is express contradictory testimony, as there was here, the inference that at least one of the witnesses is lying is a reasonable one. *Wheeler*, 691 P.2d at 604–5. We have previously considered the effect of a similar statement in *Barnes v. State*, 642 P.2d 1263, 1265 (Wyo.1982), where we said that "calling a defendant a thief and a liar may not be in good taste," but when the evidence supports a reasonable inference that such is in fact the case, it does not constitute reversible error to argue the question. *Id.* at 1266.

We see no reason to revisit that authority in the context of this case and, therefore, we decline to overrule or otherwise modify our holdings in the above-recited cases.

■ [¶ 15] Beaugureau's argument in this regard also asserts that the prosecutor engaged in misconduct during his cross-examination of her. The prosecutor asked Beaugureau several times whether or not she believed that other witnesses were lying if they contradicted her. On the first occasion, defense counsel objected, and the district court sustained, striking the question and the answer. On the second occasion, the trial court cautioned the prosecutor, "Please don't ask one witness to comment on the truth of another witness's testimony. I think that's objectionable." On the next occasion, the district court sustained another objection made by defense counsel, again cautioning the prosecutor, "Mr. Schafer, I think I made that ruling a couple of times. Do you have any authority that indicates that my prior ruling, about not challenging one witness as to whether another witness lied, is incorrect?" The prosecutor indicated that he did not, and the trial court admonished the prosecutor to "heed my admonition." Defense counsel then made a motion for mistrial based upon the prosecutor's repeated misconduct in this regard. The district court denied the motion for mistrial, concluding that he had properly handled defense counsel's objections and that the prosecutor's "violations" were not of a magnitude to require a mistrial. The jury was given the standard instructions with respect to its role in determining the credibility of witnesses, but defense counsel did not seek further clarifica-

tion in the form of a more explicit instruction to address the prosecutor's misconduct.

[¶ 16]  In *Sheeley v. State*, 991 P.2d 136, 138–140 (Wyo.1999), although the overall context is significantly different, we emphasized that any improper invasion of the jury's function as the arbiter of a witness's credibility is critical and must be treated as error per se. Our discourse from that case is worth repeating here:

> At the preliminary hearing for another case against Sheeley, the victim testified she did not have sexual contact with Sheeley in Wyoming.  At trial the victim testified she did have sexual contact with Sheeley in Wyoming, but then appeared to recant that testimony.  On direct examination, the defense investigator testified that the victim told him she did not have sex with Sheeley in Wyoming.  During cross-examination, the prosecutor questioned the investigator about the victim's testimony at the preliminary hearing as follows:
>
> > [Prosecutor] Q:  You were present for that.  Then she testified in court apparently much the way that she talked to you, did she not, that it had happened once in Oregon and whatever?
> >
> > A:  Yes.
> >
> > Q:  And do you recall what **the court, the judge** said with regard to that testimony?
> >
> > A.  I think he cautioned her in regard to perjury.
>
> Sheeley did not object to this testimony and presents the issue to this court in terms of plain error.  However, we are inclined to perform an error per se analysis because the prosecutor asked the witness to repeat a judge's admonition from another proceeding.  We can not fathom a time nor a place where such a question would properly be presented to a witness. First, it improperly interjected judicial bias into the proceedings; and second, it required an answer that seemed to address the judge's opinion of the credibility of the victim.
>
> We have held that " 'testimony offering an opinion as to the guilt of the defendant, when elicited by a prosecuting attorney,

should be perceived as error per se.' " *Dudley v. State*, 951 P.2d 1176, 1178 (Wyo. 1998) (quoting *Stephens v. State*, 774 P.2d 60, 68 (Wyo.1989)).  We considered a similar dilemma in *Stephens:*

> We are sensitive to the proposition that judicial restraint generally demands that we address only those issues properly before us and preserved for our review.  We also know that it is within our jurisdiction to decide any case as justice may demand.  In addition, recent experience with post-conviction remedies teaches us that the failure of counsel to raise issues which implicate constitutional rights of a defendant in an appeal will result in those issues being presented in a subsequent proceeding under a claim of ineffective assistance of counsel.  Consequently, judicial efficiency strongly suggests the treatment of obvious matters in the first appeal.  We also have in mind the pertinenc[e] to the State of Wyoming of this statement by the Supreme Court of the United States:
>
> " * * * Society wins not only when the guilty are convicted but when criminal trials are fair;  our system of the administration of justice suffers when any accused is treated unfairly.  An inscription on the walls of the Department of Justice states the proposition candidly for the federal domain: 'The United States wins its point whenever justice is done its citizens in the courts.' "

*Stephens*, 774 P.2d at 63(quoting *Brady v. Maryland*, 373 U.S. 83, 87, 83. S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963) (citations omitted)).

In *Dudley*, we discussed the significance of per se error:

> The import of proclaiming an event as error per se is articulated in *Stephens* as follows:
>
> > Even though error is found, it still is necessary, in most instances, to determine whether the error was prejudicial. Unless the situation reaches the level of error per se, or is perceived to be constitutional error, error is prejudicial only if

the defendant can establish a reasonable probability that, in the absence of the error, the verdict might have been more favorable.

*Id.* at 67 (citation omitted). Testimony elicited by a prosecutor which offers an opinion as to the defendant's guilt must be presumed prejudicial rather than treated as a question of plain error because it is impossible to determine whether the jury may have relied on the opinion in reaching its verdict. *Id.* at 68; *Bennett v. State,* 794 P.2d 879, 881 (Wyo.1990); *Whiteplume [v. State],* 841 P.2d [1332] at 1338 [ (Wyo.1992) ].

*Dudley,* 951 P.2d at 1178. Although the investigator did not give his opinion as to the guilt of the defendant, the prosecutor's question obviously sought to elicit, and did elicit, not only irrelevant evidence, but evidence which infected the proceedings with judicial bias and improper opinion testimony.

The North Carolina Supreme Court has discussed the danger of judicial comments concerning perjury affecting the jury:

Any intimation by the judge in the presence of the jury, however, that a witness had committed perjury would of course, ... constitute reversible error.... Therefore, judicial warnings and admonitions to a witness with reference to perjury are not to be issued lightly or impulsively. Unless given discriminatively and in a careful manner they can upset the delicate balance of the scales which a judge must hold evenhandedly. Potential error is inherent in such warnings, and in a criminal case they create special hazards.

First among these is that the judge will invade the province of the jury, which is to assess the credibility of the witnesses and determine the facts from the evidence adduced.... It is most unlikely that a judge would ever warn a witness of the consequences of perjury unless he had determined in his own mind that the witness had testified falsely.

*State v. Locklear,* 309 N.C. 428, 306 S.E.2d 774, 778 (1983) (quoting *State v. Rhodes,* 290 N.C. 16, 224 S.E.2d 631, 636–38 (1976)).

We have often warned that a trial judge must use care not to comment on the evidence. *Harris v. State,* 933 P.2d 1114, 1118 (Wyo.1997) (quoting *Phillips v. State,* 597 P.2d 456, 458 (Wyo.1979)) (quoting *Peterson v. McMicken (Nelson's Estate),* 72 Wyo. 444, 499, 266 P.2d 238, 261 (1954)). In a jury trial the judge must refrain from expressing an opinion on the weight or quality of the evidence. *Harris,* 933 P.2d at 1118. Any expression of opinion on the evidence indicating possible bias on the part of the trial judge is prejudicial, as infringing upon the jury's duties. *Id.* This is especially true in criminal cases. *Phillips,* 597 P.2d at 458. Such comments are prejudicial, reversible error. *Id.*

The jury was asked to decide which version of the victim's allegations was true. The jury could have drawn the conclusion that the preliminary hearing judge believed the story which would result in the guilt of the defendant over the story which absolved him. That opinion, or the impression of that opinion, had no place before this jury. "The jury is charged with resolving the factual issues, judging the witnesses' credibility, and ultimately determining whether the accused is guilty or innocent." *Newport v. State,* 983 P.2d 1213, 1215 (Wyo.1999) (citing *Gayler v. State,* 957 P.2d 855, 860 (Wyo.1998); *Zabel v. State,* 765 P.2d 357, 362 (Wyo.1988)). "A witness may not, therefore, vouch for the credibility of another witness or a victim." *Newport,* 983 P.2d at 1215 (citing *Gayler,* 957 P.2d at 860; *Curl v. State,* 898 P.2d 369, 373–74 (Wyo.1995)). The testimony raises concerns about its effect on the jury, "namely, that 'the testimony could have decided the case for the jury.'" *Bennett v. State,* 794 P.2d 879, 882 (Wyo.1990) (quoting *Stephens,* 774 P.2d at 67). "[I]mproper invasion of the jury's function remains critical and any invasion of the jury's role must be treated as error per se." *Id.*

(Emphasis added.)

[¶ 17] Of course, the violation is even more serious when the province of the jury is invaded by the opinion of a judge. Nonetheless, it is likewise error and miscon-

duct for the prosecutor to cross-examine a defendant using the "lying" or "mistaken" technique (*i.e.*, well, then if "so-and-so" said "such-and-such," was he "mistaken" or "lying?"). Such questions are improper. If the prosecutor merely asked Beaugureau about what other witnesses had to say, allowing the jury to draw its own conclusions, the cross-examination would not have been objectionable. *State v. Diggs*, 34 P.3d 63, 72–73 (Kan. 2001); *State v. Manning*, 270 Kan. 674, 19 P.3d 84, 100–3 (2001) ("Questions which compel a defendant or witness to comment on the credibility of another witness are improper. It is the province of the jury to weigh the credibility of the witnesses." (collecting cases)); *State v. Stevenson*, 70 Conn.App. 29, 797 A.2d 1, 7–9 (2002) (Such questions are improper because they "require a defendant to comment on another witness' veracity ... invade the province of the jury, create the risk that the jury may conclude that, in order to acquit the defendant, it must find that the other witnesses lied, and distort the state's burden of proof.") (relying on *State v. Singh*, 259 Conn. 693, 793 A.2d 226, 234–39 (2002)) (collecting cases); *also see State v. Walden*, 69 Wash.App. 183, 847 P.2d 956, 959 (Div. 1 (1993)); and *State v. Pitts*, No. 47488–0–I, 2001 WL 1641225 at *4 (Wash.App. Div. 1, Dec.24, 2001) (per curiam) (use of word "lying" is misconduct; use of word "mistaken" merely objectionable).

■ [¶ 18] As noted above, defense counsel objected on each occasion and the objections were sustained. The prosecutor's persistence in engaging in misconduct despite two very clear admonitions causes grave concern. But the same authorities we have cited immediately above also counsel that errors such as these must be prejudicial to the defendant, and must have served to deny that defendant a fair trial, before reversal of the conviction becomes the required remedy. We have examined the evidence in this case carefully and thoroughly, and we will hold that the misconduct of the prosecutor should not result in the reversal of defendant's conviction. The prejudice to Beaugureau was slight and the evidence against her overwhelming. Thus, we will conclude that the errors were harmless.

**Need for Substitute Counsel**

■ [¶ 19] This issue arises because Beaugureau expressed dissatisfaction with the performance of her attorneys at a change of plea hearing held on November 16, 1999. The record does not reflect that Beaugureau asked for the appointment of different, substitute, or additional counsel (she had two attorneys representing her). This matter was not raised in the trial court and, therefore, we decline to review it on appeal. *Bell v. State*, 994 P.2d 947, 957 (Wyo.2000); *also see Bailey v. State*, 12 P.3d 173, 177–79 (Wyo. 2000).

## CONCLUSION

[¶ 20] We hold that there is evidence to sustain both convictions. Further, we hold that the errors committed by the trial court and the State, as well as the misconduct of the prosecutor, is not sufficiently prejudicial so as to require reversal of those convictions. The judgment and sentence of the district court are affirmed.